[Crim. No. 1215.   Fourth Dist.   Jan. 24, 1957.]

THE PEOPLE, Respondent, v. KENNETH P. BARNUM
et al., Appellants.

John H. Marshall, under appointment by the District Court of Appeal, and Harold J. Ackerman for Appellants.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

COUGHLIN, J. pro tem.*—A market, drugstore and post office in Buttonwillow, California, were burglarized in the early morning of November 26, 1955, at about 4 o'clock. Shortly thereafter, the local office of the sheriff sent out an alarm; a road block was set up on Buttonwillow Highway; a few minutes later a deputy sheriff observed an automobile going easterly along this highway and gave chase; the automobile increased its speed; its lights were turned off and on; the sheriff's car increased its speed up to 85 miles per hour and displayed a red light for a mile and a half and sounded a siren for three-quarters of a mile before overtaking the pursued automobile which was occupied by the defendants, who were taken into custody and charged with the burglaries in question. The informations accusing the defendants of these offenses also charged the defendant Bundy with two prior convictions and the defendant Barnum with three prior convictions.

At the time set for trial the attorney for defendants waived a trial by jury and proceeded to trial. The court found each of the defendants guilty of each of the burglaries and also found that the allegations with respect to the prior convictions were true. Motions for new trial were made and denied. Judgments of imprisonment in the state penitentiary followed.

---

*Assigned by Chairman of Judicial Council.

This appeal is from the judgments and orders denying defendants' motions for new trial.

The defendants contend that the evidence is insufficient to identify them as the persons who committed the burglaries, and it was error for the court to try the case without a jury as they did not waive a trial by jury in the manner required by law.

■ Circumstantial evidence is relied upon to prove the defendants were the persons who committed the crimes in question. The identification of the perpetrator of an offense may be established entirely by such evidence (*People* v. *Goodall*, 104 Cal.App.2d 242, 247 [231 P.2d 119]; *People* v. *Mattmueller*, 30 Cal.App.2d 532 [86 P.2d 838].)

The three buildings which were burglarized were in close proximity. Attempts to break into the market were made in several places; a board was pried off the outside of a walk-in refrigerator and sawdust insulation fell out; at another section of this refrigerator, where an entry was attempted, fused silica insulation dropped out; and at a third place, which was an old ice chute, red fiber insulation was uncovered. Samples of each of these insulating materials were taken to a forensic chemist who found particles of similar material in the clothing of defendants which had been delivered to him for examination. There were heel prints in the rear of the market similar to prints which could have been made by the heels on defendant's shoes.

In the post office the burglars pried open two safes. One of them was "peeled." In doing so a type of white insulating substance, known as fire clay, was scattered over the floor. This fire clay contained a gold-colored mica which the forensic chemist described as being the same in appearance and composition as samples of mica in a white clay which he removed from the shoes, socks, trousers, cuffs and coat pockets of the defendants. Samples of green paint from the two safes were furnished the chemist and he testified that these were similar in appearance and composition to paint chips which he removed from the shoes and clothing of the defendants. In the rear of the post office there were heel prints similar to those near the market, and which could have been made by the defendants' shoes. From one of the safes a green box containing money was removed. This box was found on the morning of the burglary alongside the highway over which defendants had traveled, during what appeared to be an attempt to flee from the officers pursuing them, at a point about

a mile from where they were stopped. Money was scattered in the vicinity.

In the drugstore, the burglars had ransacked drawers in the prescription room and stolen some narcotics. On the floor was a blue bag containing a drill, hammer, punch and other instruments useful in forcing a safe. In this bag, and on the drill, hammer and punch, there were paint chips similar in physical appearance and chemical composition to the paint chips found on the clothing of the defendants and the samples taken from the post office safes. Also in this bag were mica, reddish wood fibers and fused silica particles similar to those found in the clothing of the defendants and the samples from the market and post office. There was a piece of cardboard on the floor with a heel print on it which an officer testified was similar to the other heel prints heretofore described. Additional heel prints, with the same design, were found in the rear of the store. On the head of the hammer in the blue bag was a fragment of brass and, on examination, a fragment of brass dropped from the shoes of the defendant Bundy. A man was seen coming from the back door of the drugstore, shortly after the officers had been called, who was described as wearing a faded blue jacket. The defendant Bundy was wearing a powder blue sport shirt at the time of his arrest. This man ran through some brush-covered terrain, along nearby railroad tracks, and was chased by one of the officers, but was not overtaken. The brush was described as tumble weed. When arrested, particles of tumble weed were on the trousers of both defendants. The forensic chemist who had been furnished with samples of tumble weed from the area in question, testified that pods from the tumble weed furnished him, which he described as plant material, appeared to be the same as the plant material found on the defendants' clothing. These pods had characteristics which made them readily identifiable. Along the railroad tracks there were additional heel prints similar to those found in the vicinity of the buildings.

When questioned, the defendants gave an unsatisfactory explanation respecting their presence in the vicinity. Bundy said they left Los Angeles on November 24th and went to San Francisco; that they left San Francisco on November 25th to return to Los Angeles and lost their way; they had been in San Luis Obispo, which is on United States Highway 101, many miles away; they were riding in an automobile belonging to a friend of Barnum, whose name he did not know; and he

had been employed in Los Angeles but, with one exception, did not know the names of his employers. Barnum said he was in a predicament and would not talk; to most of the questions asked him he made the reply: "No comment," or refused to answer. Neither of the defendants testified at the trial.

The principal attack upon the sufficiency of the evidence is directed at the opinions of the forensic chemist who testified to the similarity between samples of material furnished him and those which he obtained from the clothing of the defendants. It is contended that the samples were not of adequate size to justify the conclusion reached. This contention goes to the weight of the evidence which is not a subject of review by this court. (*Estate of Teel*, 25 Cal.2d 520, 527 [154 P.2d 384]; *People* v. *Primo*, 121 Cal.App.2d 466, 469 [263 P.2d 443]; *People* v. *Mercer*, 103 Cal.App.2d 462, 466 [229 P.2d 411].) It is contended, also, that the trial court was not authorized to infer that the samples found on the defendants' clothing were from the same source as the samples given to the chemist because his identification thereof was limited to describing them as appearing to be the same, similar, of the same color, having the same chemical elements, or similar in physical appearance and chemical composition. It is argued that the materials taken as samples from the defendants' clothing could have come from sources other than the insulating materials at the market, the safes at the post office or the tumble weeds along the railroad tracks. Likewise, that the heel prints could have been made by shoes other than those of the defendants. Nevertheless, in the light of all the circumstances, it is reasonable to conclude that the source of the materials and footprints in question connect the defendants with the commission of the burglaries under consideration, even though a contrary conclusion also might be reasonable. "A conviction may not be set aside because the evidence is susceptible of two reasonable inferences, one looking to the guilt of the defendant and the other to his innocence." (*People* v. *Green*, 13 Cal.2d 37, 42 [87 P.2d 821].) The conclusion drawn by the trial court is supported by the failure of the defendants to testify and explain the source of the materials found on their clothing. They could reasonably be expected to know where they may have come in contact with tumble weeds, white clay containing mica, sawdust, red insulation material, fiber glass, identified by the expert as fused silica, or particles of green paint,

and their failure to testify with respect to these matters justified the belief that the inferences unfavorable to them were the more probable (*People* v. *Adamson*, 27 Cal.2d 478, 491 [165 P.2d 3] ; *People* v. *Kross*, 112 Cal.App.2d 602, 610 [247 P.2d 44].)

The unsatisfactory explanation, by one of the defendants, of their presence in the locality where the burglaries occurred; the refusal of the other defendant to answer questions directed toward ascertaining their reason for being in this locality; and their unexplained flight when pursued by the officers, are circumstances showing a consciousness of guilt (*People* v. *Waller*, 14 Cal.2d 693, 702 [96 P.2d 344] ; *People* v. *Yeager*, 194 Cal. 452, 486 [229 P. 40] ; *People* v. *Weber*, 149 Cal. 325, 339 [86 P. 671] ; *People* v. *Moody*, 93 Cal.App.2d 66, 71 [208 P.2d 692].)

Although a single circumstance, pointing to the guilt of a defendant, when considered alone, may be entitled to little weight, when considered with other similar circumstances may be significantly incriminating. (*People* v. *Steccone*, 36 Cal.2d 234, 240 [223 P.2d 17].) The whole of the circumstances in this case constitute substantial evidence supporting the judgment of the trial court.

The remaining contention of the defendants concerns the effect of the proceedings at the time the jury was dismissed and the case proceeded to trial before the court. The attorney for defendants advised the court that they waived a trial by jury. The district attorney joined in this waiver. Thereupon, the court ordered a roll call of the prospective jurors present and advised them that they were excused, as the defendants had waived a trial by jury. The defendants were present during all of this time; they made no statement; were not asked personally whether they joined in the waiver; and at no time made any objection to proceeding to trial before the court without a jury.

Article I, section 7 of the state Constitution provides, in part, that: "A trial by jury may be waived in all criminal cases, by the consent of both parties, expressed in open court by the defendant and his counsel." It has been held repeatedly that the consent of the defendant must be expressed by him personally and may not be implied (*People* v. *Garcia*, 98 Cal.App. 702 [277 P. 747] ; *People* v. *Wilkerson*, 99 Cal.App. 123 [278 P. 466] ; *People* v. *Barba*, 100 Cal.App. 557 [280 P. 549] ; *People* v. *Spinato*, 100 Cal.App. 600 [280 P. 691] ; *People* v. *Wyatt*, 101 Cal.App. 396 [281 P. 629] ; *People* v.

*Woods*, 126 Cal.App. 158 [14 P.2d 313] ; *People* v. *Washington*, 95 Cal.App.2d 454 [213 P.2d 70] ; *People* v. *Shannon*, 110 Cal.App.2d 153 [241 P.2d 1007] ; *People* v. *Pechar*, 130 Cal.App.2d 616 [279 P.2d 570] ; *People* v. *Benjamin*, 140 Cal. App.2d 703 [295 P.2d 477].) In each of these cases in which a petition for hearing before the Supreme Court has been filed such petition has been denied. In *People* v. *Pechar*, 130 Cal. App.2d 616, 619 [279 P.2d 570], the court held that the consent of a defendant waiving a trial by jury must be expressed "by the use of language." In the case at bar, the attorney general, on behalf of respondent, urges the same contention which he urged in the cited case, i.e., that consent may be "expressed" by conduct as well as by words, and asks this court to reappraise the rule. In the light of the consistent adherence to this rule, over a period of 27 years, by the appellate courts of this state, and the refusal of the Supreme Court to grant a hearing in any case applying it, we do not feel that such a reappraisal is within our province.

The judgment and order denying a motion for new trial as to each defendant is reversed.

Barnard, P. J., and Griffin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 20, 1957.