[Crim. No. 6103. Second Dist., Div. One. Feb. 5, 1959.]

THE PEOPLE, Respondent, v. ROBERT JUSTICE, Appellant.

Claude Vibart Worrell for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

LILLIE, J.—Defendant was convicted of two counts of selling heroin to Joseph A. Brown in violation of section 11500, Health and Safety Code, and sentenced to the state prison. He appeals therefrom, contending that the evidence is insufficient to support the judgment; Brown's testimony was "untrustworthy" and 'perjurious" and therefore "not competent"; at the preliminary hearing the court denied him the right to learn the name of the informant; and two unreported conferences at the bench deprived him of due process of law.

Although, in connection with the first two contentions, he declares the reporter's transcript to be "replete with contradictions, changed testimony and explanations thereof" and that Brown's testimony varied considerably from that given at the preliminary hearing, appellant seeks to avoid his responsibility of supporting his allegations with references to the record, by stating without further argument "(t)hese instances are so numerous that only a complete reading of Brown's testimony would satisfy the appellant (sic) contentions, hence no referrals to specific pages of the Reporter's Transcript." Of course, such a method of proceeding on appeal is wholly inadequate for not only has appellant failed to comply with rule 15(a), Rules on Appeal, requiring "(T)he statement of any matter in the record shall be supported by appropriate reference to the record," but he has ignored the general rule that the burden is upon appellant to point out any alleged error. As stated by the court in *People* v. *Goodall,* 104 Cal.App.2d 242, at page 249 [231 P.2d 119] : "It is the duty of the defendants to show error, and that means defendants are under an affirmative duty in that respect. It is not proper to attempt to shift that burden upon the court or respondent. (*People* v. *Shafer,* 101 Cal.App.2d

54, 60 [224 P.2d 778]; *People* v. *Daniels,* 85 Cal.App.2d 182, 185 [192 P.2d 788].)'' In neither his so-called ''Statement of Fact,'' nor his argument supporting his first two contentions has appellant made any specific reference to the record either by page or line. He has failed to point out the alleged conflict in the testimony upon which he relies; in what manner the evidence was not substantial to support the judgment; and in what particular the evidence was insufficient to sustain the verdict. In the absence of any such showing, we must assume there is sufficient substantial evidence to support the conviction on both counts. ''His failure to specify the prejudicial feature of the evidence must be taken to mean that there is none. (*People* v. *Britton,* 6 Cal.2d 10, 13 [56 P.2d 491]; *People* v. *Hermes,* 73 Cal.App.2d 947, 950 [168 P.2d 44].)'' (*People* v. *Shafer,* 101 Cal.App.2d 54, 61 [224 P.2d 778].)

Although it would appear from appellant's own ''Statement of Fact'' that there is ample evidence to sustain the conviction, we nevertheless have carefully examined the record and, in particular, the testimony of Joseph A. Brown, and viewing the evidence in the light most favorable to respondent, we find more than sufficient substantial evidence to support the jury's verdict.

In connection with Count 1, on September 26, 1956, Joseph A. Brown, a sheriff's undercover operator, had a conversation concerning a narcotics purchase with one Hattie Jackson in the vicinity of a café on 103rd street. Thereafter, he left the location and returned three and a half hours later where he saw Hattie and the defendant drive by in an automobile driven by the latter. Defendant stopped the car and Hattie walked over to Brown, who was standing on the sidewalk, where they again discussed a purchase of narcotics. Brown gave her $14 to give to defendant for a $15 paper of heroin. During this time defendant drove around the block and when he returned, Hattie got back into the car and drove away with him, leaving Brown standing on the corner. Less than 10 minutes later, they returned in the car and stopped near Brown, who walked over to the driver's side. Hattie introduced him to the defendant saying, ''This is Robert, he is a connection.'' Defendant then, saying he would sell Brown this time but in the future it would cost him $15, handed a paper of white powder, later identified by a forensic chemist to be heroin, to Hattie, who handed it to Brown. Hattie then got out of the car and stood with Brown in the

street where they again engaged in a conversation. Defendant drove away.

Sheriff's deputy Stameisen kept Brown under surveillance on that day and saw him with Hattie. Fifteen minutes later he saw them standing next to an old model brown Chevrolet talking to defendant who was seated in the car.

As to Count 2, on December 11, 1956, Brown and an informant, Willis Tucker, were seated in an automobile. At 3:30 p. m., Brown saw defendant on foot. They got out of their car and walked over to him. Defendant asked him who he was and Brown responded that his name was "Buba." Defendant admonished Tucker he should know better than to bring strangers to him for he did not do business with strangers. Defendant told Brown to give his money to Tucker, and he gave him $20. Then defendant and Tucker walked down the street alone and Brown saw Tucker hand defendant the money. They stopped walking, talked, and then defendant made a motion to his mouth and passed an object therefrom to Tucker, who made a motion toward his mouth, and left the defendant. He walked back to Brown and took from his mouth two balloons, containing what was later identified as heroin, and handed them to him.

Sheriff's deputy Caraway, who kept Brown under surveillance on this day, watched him in the company of defendant and another male Negro.

On December 13, 1956, by prearrangement with defendant, Brown met him and a third party. Defendant drove them in his car around Watts for about five minutes during which defendant asked Brown his identity, where he lived, whom he knew who sold narcotics, and to show him the needle marks he was supposed to have. Brown was evasive and defendant told him he believed him to be the "heat" (police), and pushing an open knife blade, 3 or 4 inches long, against his side, threatened that if he was, he would "cut his damn guts out." Brown convinced him he was not the "heat" and after telling him that all he wanted to do was buy dope and not get killed, he got out of defendant's automobile and walked away.

On his defense, defendant testified he managed an auto wrecking yard and had owned no brown Chevrolet. He denied knowing Hattie, seeing Brown on September 26, 1956, or that he handled narcotics at any time. He admitted knowing Willis Tucker since junior high school, and said he saw him on December 11 with Brown. At one time in his testimony

he said he had not seen Tucker for two or three years prior, but at another place therein, he said he had seen him seven or eight weeks before. He admitted Tucker asked him where he could buy some dope, but he said he did not know; and that he walked down the street with him but did not receive money from him, or sell or give him narcotics. Defendant testified he saw Brown on December 13 and rode with him and one Price, but not through prearrangement; that they talked about narcotics, but he told them he had no connection with them; that he pulled the knife because, after swearing and arguing, Brown put his hands in his pocket, and he was afraid that he, like all narcotic addicts, was desperate.

As to the alleged incompetency of Brown's testimony, appellant's contention that it "could be considered perjurious and appellant so contends that it is. This testimony so taints the trail (sic) as to render the same void," constitutes his entire argument on that point, with the exception of the citation of "*Alcorta* v. *Texas* (1957), 353 U. S. 972 [77 S. Ct. 1063, 1 L.Ed.2d 1135]" which has no application. No so-called contradictions, inconsistencies or variations in Brown's testimony have been called to our attention. We again refer appellant to the general rule set forth in *People* v. *Daniels,* 85 Cal.App.2d 182, at page 185 [192 P.2d 788] : ". . . it is the duty of the appellant to show error, and that means he is under an affirmative duty in that respect. It is not proper to attempt to shift the burden upon the respondent, and the latter is under no duty to assume the burden of demonstrating that the judgments are supported in the absence of a proper attack upon them. . . ." However, having carefully examined Joseph Brown's testimony, we find nothing inherently improbable or apparently false about it and perceive no reason why it was not competent. As was said in *People* v. *Thomas,* 103 Cal.App.2d 669, at page 672 [229 P. 2d 836] : "It was the function of the trial court, not this court, to resolve inconsistencies and contradictions, if any, in the testimony of Bennett. The trier of fact may believe and accept a portion of the testimony of a witness and disbelieve the remainder. On appeal that portion which supports the judgment must be accepted, not that portion which would defeat, or tend to defeat, the judgment." To the same effect is *People* v. *Shaheen,* 120 Cal.App.2d 629 [261 P.2d 752].

It is further contended "that the refusal of witness Brown to name his informant at the preliminary hearing

... deprived the appellant of his constitutional rights." In support of this claim, appellant cites extensively from the District Court of Appeal opinion in *Priestly* v. *Superior Court,* (Cal.App.) 319 P.2d 796, since affirmed by the Supreme Court in 50 Cal.2d 812 [330 P.2d 39], and for the first time makes reference to a page and line of a reporter's transcript. However, the reporter's transcript to which he now refers is not a part of the record before this court. None of the proceedings on the preliminary hearing is before us and in the absence of a reporter's transcript thereof, we find no support for his contention in the record on appeal. We do not know whether defendant requested the name of the informant at the preliminary hearing; whether it was disclosed; if not, for what reason; what, if anything, was the court's ruling thereon if a request was made, or how or in what manner prejudice resulted. It is obvious, therefore, *De Losa* v. *Superior Court,* 166 Cal.App.2d 1 [332 P.2d 390], cited by appellant, is not in point. █ It is well settled that where the transcript of the testimony received at the preliminary hearing is not made a part of the record in the superior court, any alleged error in the preliminary hearing cannot be considered on appeal. In *People* v. *McKinney,* 152 Cal.App.2d 332, the court stated, at page 335 [313 P.2d 163] : "However, neither the check stubs nor preliminary transcript was made part of the record in the trial court and, therefore, may not be considered by this court. (*People* v. *Gormley,* 64 Cal.App.2d 336, 338 [148 P.2d 687]."

The fact that defendant now injects the point, not represented by the record, into this appeal by way of an opening brief, does not change the rule that such matters cannot be considered by this court on the suggestion of counsel in their briefs. In *People* v. *Hernandez,* 150 Cal.App.2d 398 [309 P.2d 969], the appellant set forth in his brief certain portions of the proceedings taken before the grand jury, not a part of the appeal record, to show that an interpreter was not necessary and one was sworn. Said the court at page 400: "Of course, this would not be a proper or sufficient record or showing in respect to the points raised. (Citations.)" And again at page 402: "Matters not presented by the record cannot be considered on the suggestion of counsel in briefs."

█ As to any claimed prejudice resulting to defendant, it is interesting to note from the record before us that not only was informant's name, Willis Tucker, disclosed by the People at the trial, but defendant himself voluntarily revealed

in his own testimony that he well knew Tucker, had gone to junior high school with him, had kept up this acquaintance since, had seen him seven or eight weeks before his arrest and was with him on December 11. Nor is there any showing in the record that defendant planned or wanted to call Tucker as a witness or tried or was unable to locate him. Under these circumstances, we fail to see how any such alleged error could be prejudicial. (*People* v. *Lazzara*, 131 Cal.App.2d 663 [281 P.2d 4].)

■ Appellant's last contention "(T)hat 'in the course' of the Superior Court trial proceedings two stages of the procedures was (sic) held off the record, therefore, the petitioner or petit jury does not know what was said between the judge, district attorney, and defense counsel, which deprived him of a fair and impartial trial in violation of rights guaranteed to him by the due process and equal protection of the laws clauses of Section I of the Fourteenth Amendment and Article 6 Section 2, both of the Constitution of the United States," citing in support thereof *People* v. *Southack*, "109 A.C.A. 745 [241 P.2d 558]," and *People* v. *Berling*, "115 A.C.A. 306 [251 P.2d 1017]," is likewise without merit. He argues that when the "two violations occurred the Superior Court 'LOST JURISDICTION'" and "was without authority or power of any law to accept the verdict of the Petit Jury or to render the void Judgment or to issue the invalid commitment under which the petitioner is illegally imprisoned."

The defendant's reference to the opinion in *People* v. *Southack, supra*, appears to have been taken from "109 A.C.A. 745" at page 747. This opinion is no longer the law, having been superseded by one of the Supreme Court (39 Cal.2d 578 [248 P.2d 12]). The Supreme Court therein did not consider the point which resulted in that portion of the opinion of the District Court of Appeal cited by appellant in his brief. It is not controlling here; nor is *People* v. *Berling*, 115 Cal.App.2d 255 [251 P.2d 1017], which relates to an entirely different factual situation.

The two discussions in question, not having been reported, are not a part of the record before us, but having reviewed the transcript at the points at which these conversations took place, it is obvious from the court's remarks following them that the first, after the opening statements to the jury and before any evidence was taken, wherein defendant's own counsel sought to approach the bench, involved his request to exclude from the courtroom all witnesses who would testify,

which request was granted. The second discussion, wherein the trial judge himself asked counsel to approach the bench, obviously referred to the court's suggestion that a recess be taken. Any argument that because of these discussions at the bench defendant was not present during all steps of the trial, is wholly without merit. In *People* v. *Baker*, 164 Cal.App.2d 99 [320 P.2d 240], a similar contention was made and rejected. The conversation at the bench in that case involved the right of a witness to refuse to answer a question. Said the court at page 111: "No objection was made by appellant or his counsel at the time that anything was being said out of the hearing of appellant. His own counsel took part in the conversation at the bench. Therefore, this record does not disclose a situation where in any practical sense appellant was not present at all times during the trial."

As to any prejudice arising out of these two off-the-record discussions, the jury did not hear them, therefore it could not possibly have been influenced by them; defendant's attorney who was at all times present asked for one conference and participated in both conversations; and neither defendant nor his counsel at any time objected to them in the trial court. In addition, the conversations did not relate to the issue of guilt. Furthermore, it is for the appellant to show any prejudice resulting to him (*People* v. *Isby*, 30 Cal.2d 879 [186 P.2d 405]; *People* v. *Baker*, 164 Cal.App.2d 99 [320 P.2d 240]). This he has failed to do.

For the foregoing reasons the judgment is affirmed.

White, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 1, 1959.