[Crim. No. 6511.   Second Dist., Div. One.   Apr. 22, 1959.]

THE PEOPLE, Respondent, v. ERNEST RODRIGUEZ, Appellant.

Ernest Rodriguez, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Norman H. Sokolow and David B. Allen, Deputy Attorneys General, for Respondent.

LILLIE, J.—Defendant pleaded not guilty to two counts of an information charging sale of heroin on August 31 and September 3, 1957, in violation of section 11500, Health and Safety Code; and denied two prior felony convictions alleged therein. He waived his right to a trial by jury and by stipulation submitted the cause to the court on the reporter's transcript of the preliminary hearing, each side reserving the right to offer additional testimony. The trial judge convicted him on both counts, made no finding on the alleged prior convictions, denied probation and sentenced him to the state prison. His motion for a new trial was denied and he appeals from the judgment of conviction.

Appellant, making no pretense of following the rules relating to appellate briefs (Rules on Appeal, rule 13) presents the following points: even though the informant testified for the prosecution, because of the nature of his testimony, the People actually neither identified nor produced an informer against him "as required by law"; there was no corroboration of the officer's testimony; the evidence was insufficient to support the judgment; there was no proper waiver by him of a jury trial; and he was denied a public trial because of a discussion in chambers outside of his presence.

Viewing the evidence in a light most favorable to the prosecution, the following is a brief summary of the pertinent facts: In connection with count 1, Deputy Burley on August 31 went to the home of informer Womack, whom he searched finding no money or narcotics on his person, and with whom he drove to 41st Street and Compton to meet defendant and buy heroin. At approximately 11 a.m., defendant drove up in a 1951 or 1952 green Ford and they both entered his car. After a conversation between defendant and Womack wherein defendant said of Burley "this man doesn't use," he let the deputy out of the car saying, "We will leave him on the corner and I will go around the corner and give him (Womack) the stuff." When he left the car, Womack walked with him to the other side of the street where the deputy gave him $125 of county funds. Womack returned to defendant's car and they drove away. As Burley waited on the street for their return, Deputy Sells drove by, picked him up and proceeded into the neighborhood, where on 33rd Street off of Compton they observed defendant and Womack talking. Sells returned to the original location, let Burley out and again drove around. About 10 minutes later, defendant and Womack drove up and the latter got out of the car. Defendant left immediately and Womack handed the deputy a blue rubber balloon containing heroin.

On August 31 around 11 a.m., Deputy Sells saw Burley standing on the street, picked him up and drove around. He twice observed defendant and Womack on 33rd Street off of Compton, conversing on the sidewalk. About 10 minutes after letting Burley out at the location he saw defendant drive Womack back to where Burley was waiting at 41st and Compton in a 1952 green Ford, drop him off and drive away. He also observed the informer hand Burley a blue rubber balloon containing white powder.

Deputy Vacio had Burley under his surveillance on August

31, and around 11 a.m. observed Burley alone and at times with Womack and Sells.

In connection with count 2, Womack communicated with Burley on September 3 and he went to Womack's home where he listened to a telephone conversation on an extension. A male voice asked Womack if he was ready to do business and said "meet me at 41st and Compton around 11 o'clock." Burley searched Womack, found no narcotic on his person, and under the surveillance of Deputies Vacio and Guindon, went together to the location. Defendant drove up in a 1953 or 1954 Mercury with two small children. The deputy gave Womack $125 from county funds, the latter entered defendant's car and they drove away. Soon they returned, Womack got out of the car and handed Burley a small wax paper containing heroin.

At approximately 11 a.m. on September 3, Deputy Vacio saw Burley and Womack at 41st and Compton.

At 6 p.m. on the same day Burley went alone to the corner of 57th and Central to pay the balance of the money due on the 11 a.m. transaction. He waited one-half hour for defendant to appear. As he drove up in a Mercury, Burley said "Rod, I didn't think you would make it," to which defendant replied that of course he would because he had come to pick up his money. Burley handed him $92 and defendant told him he owed him $5.00 more, but could give it to him later. This made up the total of $225 paid to defendant for one ounce of heroin.

The informer, Alex Womack, called by the prosecution at the preliminary hearing, testified that he knew Burley, they had met a man at 41st and Compton on August 31, had met no other person on that date, and he bought heroin from him; that he got into the car with the man, leaving Burley at the street corner; and that the "man he and Burley contacted there and from whom he bought the heroin was the same person" on both the August 31 and September 3 sales. However, after testifying substantially the same as Burley—that he made two narcotic purchases at the instance of the deputy in the same manner described by Burley including even the amount of money paid and the amount owing on the second purchase—Womack denied defendant was the man who sold him the heroin on both occasions, naming him as "Roy" (last name unknown), not "Rod."

Defendant testified he neither drove nor owned a green Ford or Mercury, did not know Womack on August 31 or

September 3, did not know Burley until the preliminary hearing, never had a transaction involving narcotics, and was in New Orleans at the time in question. He admitted the two previous felony convictions charged in the information.

Concerning his first two contentions, appellant argues that although Womack was identified as the informer and testified, actually, no "informer" was disclosed and none testified against him, because Womack denied defendant was the person from whom he purchased the heroin; and the People being bound by his testimony, there was insufficient evidence to sustain the conviction because the deputy's testimony was not corroborated.

Considering the nature of the informer's testimony and that of Deputies Burley, Sells and Vacio, and having in mind the rule that it is within the discretion of the trial judge to accept as true a portion of a witness' testimony and reject the balance as not worthy of belief, we deem appellant's position without merit.

The record discloses a close parallel between the testimony of Deputy Burley and that of the informer on all material matters except the identity of the person from whom the heroin was purchased. Their testimony is similar in substantial respects regarding the events that took place on both dates: they both said they knew each other, met at Womack's home, went together to 41st and Compton to buy heroin and Burley gave Womack $125 on each occasion; on each date they met the same man at 41st and Compton at 11 a.m., who drove Womack away in his car and shortly thereafter returned him to Burley to whom the informer handed heroin in a balloon on August 31, and in a wax paper on September 3; and this man was the same who sold Womack narcotics on both occasions and on the last transaction he was not paid the total amount for the heroin purchased—only $153. Burley testified he met defendant at 6 p.m. on the same evening and paid him the balance due with the exception of $5.00. The only material conflict in their testimony relates to the identity of the seller. Although Womack testified the man's name was "Roy," defendant was definitely identified by two witnesses, Deputy Burley, who repeatedly testified the man with Womack on both occasions was the defendant, and Deputy Sells, who testified he saw Womack and defendant at 33rd Street just off of Compton on August 31 and later saw Womack talk to Burley.

Whether the trial judge wanted to bind the People with

the informer's denial of defendant's identity by accepting that limited portion of his testimony as true; or not do so, by believing the substantial portion of Womack's testimony parallel with that of Deputies Burley, Sells and Vachio, and rejecting Womack's denial of defendant's identity, the only material point of conflict in the testimony of the four, as worthy of belief, was solely within his discretion as the trier of the fact (*Stoner* v. *Bisno*, 162 Cal.App.2d 164 [327 P.2d 922]. ▋ He had the right to accept a portion of the testimony of a witness if he believed it to be true and reject the balance even if he believed he had wilfully sworn falsely as to a material point (*People* v. *Shannon*, 147 Cal.App.2d 300 [305 P.2d 101]). ▋ On appeal that which supports the judgment must be accepted as true. (*People* v. *Thomas*, 103 Cal.App.2d 669 [229 P.2d 836]; *People* v. *Bahara*, 159 Cal.App.2d 160 [323 P.2d 453]). ▋ It is obvious that the trial judge believed the testimony of Deputies Burley, Sells and Vacio, as against that portion of Womack's testimony exculpating defendant as the seller, and that of defendant. Even disregarding the informer's testimony there is ample competent and substantial evidence to establish defendant's identity as the seller and Womack as the buyer. It is not difficult to understand why the trial judge believed the bulk of Womack's testimony concerning the transactions and disbelieved that relating to the seller's identity. The record discloses Womack, then serving time in Folsom, was evasive and biased against Burley who had arrested him. At the very outset of his testimony, even before he was questioned concerning either transaction, and not in response to any query, Womack spoke up: "You got the wrong man. That ain't the man I met." He then testified the man's name was "Roy," although he was the only man he and Burley met on each occasion. Asked if he ever saw defendant before, Womack testified, "Not exactly. I haven't never seen the man before, not to know him"; then whether he ever saw him before he came to court, he said, "Sure, I seen him in the courtroom—down in the locker part today." Questioned if he saw him "before today" he said: "I couldn't see him. I have been in Folsom. . . ." Womack admitted, however, that he saw defendant in the county jail before being sent to Folsom, and in response to the question if he saw defendant before that, he testified "Had I seen the man, no. I told you I didn't know nothing about that man. I don't know nothing about him." Asked if he knew Deputy Burley, Womack said, "Well, he got me to buy dope for him, that is

one, and then he arrested me, that is two. He had sales on me." For purposes of impeachment, the prosecutor asked him if he gave a statement to a federal agent on June 11, 1958, in which he admitted purchasing heroin from Rodriguez with money obtained from Burley. He answered in the affirmative, and in the statement said he saw two children in the car driven by Rod. Later in his testimony, however, Womack insisted that the name he gave was "Roy," not "Rod."

Nor do we find merit to appellant's argument that there must be corroboration of Burley's testimony. ██ Corroborative testimony is not necessary to support that of the officer in a narcotics case (Code Civ. Proc., § 1844; *People* v. *Mc-Crasky*, 149 Cal.App.2d 630 [309 P.2d 115] ; *People* v. *Jones*, 153 Cal.App.2d 41 [314 P.2d 93] ) ; and as to identity the testimony of one competent witness who identified defendant as the perpetrator of a crime is sufficient to sustain a guilty verdict (*People* v. *Ferlito*, 100 Cal.App. 355 [280 P. 136] ; *People* v. *Oliver*, 102 Cal.App. 29 [282 P. 813] ). Actually, the substantial portions of Burley's testimony were corroborated by Womack; and Sells' testimony corroborated the identity of the defendant as the man he saw talking to Womack on August 31.

██ Appellant, in his supplemental opening brief, contends that the evidence is not sufficient to support his conviction, the evidence connecting him with sales being based on hearsay. He argues that the passing of heroin to Womack took place out of the deputy's presence, and in view of his (defendant's) testimony he sold no narcotics and that of the informer that he was not the seller, the evidence is insufficient to sustain the verdict. ██ It has long been the established rule on appeal that the trier of the fact is the sole judge of the weight and the worth of the evidence (*People* v. *Hills*, 30 Cal.2d 694 [185 P.2d 11] ), and the credibility of the witness (*People* v. *Lyons*, 50 Cal.2d 245 [324 P.2d 556] ), and before this court may set aside a judgment for insufficiency of evidence it must clearly appear that upon no hypothesis is there sufficient evidence to support it (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778] ). ██ Obviously, the trial judge was not impressed with the verity of defendant's testimony or that portion of Womack's testimony relating to the identity of the seller, and accepted in lieu thereof the testimony of the other witnesses. We have already reviewed the evidence appearing in the record before us and

it is apparent that even without the testimony of Womack, it reasonably justified the inference of defendant's guilt.

Appellant argues that there was no proper waiver of a jury trial because the deputy district attorney usurped the duties of the trial court by advising him of his right to a jury, and prevented the court from determining whether he understood his right and wished to waive it.

The record discloses that when the case was called for trial, defendant was present with his counsel, A. C. Bernay. The deputy district attorney told defendant in the presence of his counsel and the trial judge: "You are entitled to have a jury of 12 people here and determine this matter. Counsel has indicated to this court you wish to waive your right to a jury and have the court hear this matter sitting without a jury. Is that what you want to do." Defendant responded: "I want to submit the transcript." The deputy district attorney repeated: "Submit it on the transcript?" to which defendant stated "That's correct." Defendant's counsel, who was standing beside him, replied: "Counsel joins in the waiver," to which the prosecutor added: "People join," and then offered the stipulation that the court may read and consider the testimony taken at the preliminary hearing, and all exhibits offered and received at that time, reserving the right of both parties to offer additional testimony. Defendant's counsel then stated: "We will accept the stipulation other than the latter part of additional testimony. Neither side will present any additional testimony." The court said, "All right," and the prosecutor stated: "In other words, the stipulation with the exception that either side may put on additional testimony?" Counsel for defendant responded: "Yes."

The record reveals that whatever proceedings were had between the deputy district attorney, defendant and his counsel, relating to a jury trial, were had in the presence of the judge in open court. In advancing his position that it was the duty of the trial judge to personally advise an accused of his right to a jury trial and determine whether he understood his right and desired to waive it, he relies on article I, section 7, California Constitution, which reads in pertinent part as follows: "the right of trial by jury shall be secured to all and remain inviolate . . . A trial by jury may be waived in all criminal cases by the consent of both parties expressed in open court by the defendant and his counsel. . . ." ▇ Although the right to a jury trial is guaranteed

to every person charged with a felony (*People* v. *Hall*, 199 Cal. 451 [249 P. 859]) and it is the responsibility of the trial court to see that this right is protected, we find nothing in the statutes or law which requires the trial judge personally to advise an accused that he is entitled to a trial by jury; nor are we aware of any rule which precludes the well-known practice of the district attorney in the presence of the trial judge and in open court, of advising defendants of their right to a jury trial. Certainly defendant can neither successfully deny that he knew he was entitled to be tried before a jury nor claim he was unaware that he was being asked if he wanted the matter tried by a jury or by the court. Nor do we find anything in the law which prohibits counsel for the People from questioning the defendant in open court concerning his desire to waive a trial by jury; or requires the court to personally put such questions eliciting the waiver to the defendant.

Although to effectuate the waiver of a jury in a criminal case, the procedure prescribed by the Constitution must be strictly adhered to (*People* v. *Pechar*, 130 Cal.App.2d 616 [279 P.2d 570]), all it requires is that a jury may be waived by consent of the parties expressed in open court by defendant and his counsel (Cal. Const., art I, § 7) and that defendant personally express in open court his consent to the waiver in a manner leaving no question of misinterpretation, doubt or uncertainty, by any word that clearly indicates to the court the defendant's desire to waive a jury. Although a defendant's waiver cannot be inferred and "language must be used," no particular language is necessary as long as the words actually employed disclose in their ordinary meaning the defendant's intention to submit the case to the court without a jury (*People* v. *Bastio*, 55 Cal.App.2d 615 [131 P.2d 614].)

In the case at bar, defendant, when asked by the prosecutor in the presence of his counsel and in open court if he wanted to waive his right to a jury and have the court hear the matter sitting without a jury, said he wanted "to submit the transcript." To be certain that there was no misunderstanding, the prosecutor immediately repeated: "Submit on the transcript?" to which the defendant replied, "That's correct."

In the case of *People* v. *McDaniel*, 157 Cal.App.2d 492 [321 P.2d 497], the point was raised that the defendant did not express waiver of jury trial. At that time he was asked "Do

you want a Court or jury trial?'' to which defendant replied ''I'll accept a Court trial.'' Upon the commencement of the testimony, defendant contended he did not expressly say he waived trial by jury and stated ''He (the trial judge) never asked me did I waive right to a jury trial. I said Court trial would be sufficient. I never waived the right to a jury trial.'' The court stated, at page 497: ''The effectiveness of a jury waiver does not depend upon the use of any particular form of words by an accused; he need only use language that, in its ordinary meaning, expresses an intention to submit the matter to the court sitting without a jury. (*People* v. *Beckworth*, 151 Cal.App.2d 842 [312 P.2d 270].) In our opinion, defendant's statements were clearly sufficient as an expression of such an intention and they constituted a valid waiver of a jury trial.''

In *People* v. *Beckworth*, 151 Cal.App.2d 842 [312 P.2d 270], the defendant entered a plea of not guilty by reason of insanity and stipulated that the issue be submitted on the doctor's report. The record showed that when this was done, the trial court asked defendant ''is that satisfactory to you?'' to which he replied, ''yes, sir.'' The court held, at page 843: ''This constitutes an express waiver of a jury trial and fully complies with the requirement stated in *People* v. *Barnum*, 147 Cal.App.2d 803 [305 P.2d 986] and cases there cited, to the effect that the consent of the defendant to a trial before the court without jury must be expressed by him personally and may not be implied. As was said in *People* v. *Bastio*, 55 Cal.App.2d 615 [131 P.2d 614]; 'Article 1, section 7, of the Constitution of California provides that trial by jury may be waived in criminal cases by the consent of both parties, expressed in open court when such consent is given by both defendant and his counsel. No stereotyped language expressing such waiver need be used by the parties, it being necessary only that the words used in their ordinary meaning show an intention to submit the case to the court without a jury.' '' It is clear from the authorities in this state that, although defendant's consent must be expressed in open court, if it is expressed ''by the use of language,'' such verbal expression will suffice even though the exact words ''I waive a trial by jury'' are not used, as long as the words disclose in their ordinary meaning the defendant's intention to submit the case to the court without jury. ██ The only reasonable inference one could draw from the defendant's statement ''I want

to submit the transcript,'' after being told that his counsel indicated to the court that he (defendant) wished to waive his right to a trial by jury and have the court hear the matter sitting without a jury and asked if that was what he wanted, is that he desired to submit his case to a court without a jury.

No provision of the law requires the judge to personally advise an accused of his right to a trial by jury and that he may waive that right, or requires him to make any finding defendant understands the waiver. As a matter of fact, the record discloses the trial judge was not only aware of the proceedings had before him, but personally assented to the stipulation to submit the matter to the court without a jury on the transcript of the preliminary hearing. Obviously, the trial judge, having conferred his approval and affirmance of the stipulation to submit the matter, reasonably indicated that he found the waiver to be valid and to be properly understood by both defendant and his counsel.

The last contention of appellant, also without merit, is that he was deprived of a fair trial because the judge and counsel had proceedings in chambers outside of his presence. The record shows that at the preliminary hearing when it was obvious to the prosecutor that the informer would continue to insist defendant was not the seller, he made an effort to impeach him. A legal discussion regarding a lack of foundation for impeachment ensued between counsel. During the argument on this point, the court volunteered: ''Let's take just a few minutes recess. Will counsel come in chambers?'' A recess was taken and after the court session was resumed, the prosecutor, after the court overruled the pending objection, proceeded to inquire of Womack concerning a prior conversation he had with the federal agent.

Neither counsel asked for the recess—they were requested by the court to go into chambers. The record does not disclose that defense counsel was not present, what was said in chambers, or that any matter relating to the issue of guilt was discussed, nor does defendant even speculate concerning it. We can only assume that there continued in chambers the legal argument concerning the foundation necessary for the impeachment of Womack. However, the record is clear that no objection was ever made by defendant or his counsel at any time in the court below to any proceedings had outside of defendant's hearing. Defendant in no practical sense was deprived of a public trial and is in no position to claim prejudice (*People* v. *Justice*, 167 Cal.App.2d 616 [334 P.2d

Since neither the defendant nor his counsel made any objection to the discussion in chambers at the preliminary hearing, on the trial or on his motion for a new trial, appellant has waived his right to now complain. (*People* v. *Tugwell*, 32 Cal.App. 520 [163 P. 508]; *People* v. *Teitelbaum*, 163 Cal.App.2d 184 [329 P.2d 157].) Since it is for the appellant to show any prejudice resulting to him (*People* v. *Isby*, 30 Cal.2d 879 [186 P.2d 405]; *People* v. *Baker*, 164 Cal.App.2d 99 [330 P.2d 240]), and has failed to do so, we find his contention without merit. Appellant, in his closing brief, discusses at length the attempted impeachment of Womack. Of course, the matter before us does not involve the issue of whether the trial court's ruling on the objection of lack of foundation was proper. The only question before us relates to whether defendant was prejudiced by the proceedings had out of his presence. We find that he was not.

For the foregoing reasons the judgment is affirmed.

White, P. J., concurred.

FOURT, J., Concurring.—The information in this cause charged that the defendant had been convicted of grand theft in 1944, in Los Angeles County, and that he had served a term in prison therefor; and it further charged that in 1954, the defendant was convicted of violating the Dangerous Weapon's Control Law (an ex-convict with a gun), and that he had served a term in prison for that offense. The prosecution introduced into evidence proper documents and evidence, including certified copies of the commitment papers, fingerprint records and pictures of the defendant, which show without question the dates when the defendant was received at the prison, the length of his terms and the dates when he was discharged from parole. It was stipulated that the defendant was the person named and referred to in the prior commitment papers.

The defendant stated on direct examination, in answer to questions put to him by his own attorney, that he had previously been convicted of a felony. On cross-examination the defendant admitted that he had previously been convicted of the offenses named as to the priors alleged in the information, and that he had served a term in prison for each of such offenses.

At the conclusion of the testimony the court found the defendant guilty as charged in the information, and then asked the defendant, "Do you wish to file an application for probation?" The defendant's attorney stated, "The defendant is not eligible for probation, your honor." The judge indicated that he was going to have such an application filed in any event, whether the defendant was eligible or not, and the defendant's attorney then said, "I am wondering if we are not asking the defendant to spend a lot of dead time here?"

At the time the matter came on for further proceedings, within a few days, the attorney for the defendant pointed out to the judge that the defendant was ineligible for probation, and thereupon sentence was imposed. The judge said, "I will make no determination as to his priors . . . ." As a consequence the defendant has now gone back to the state prison, not as a third offender which he is in fact, but as a first offender.

The original file also reflects that the defendant was charged in another information filed about a week before the present case with possessing certain narcotics on June 8, 1958, and that case was dismissed "in the interests of justice" after the conviction in the present case now on appeal.

Penal Code, section 1158, provides in part as follows:

"Whenever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the offense with which he is charged, the jury, or the judge if a jury trial is waived, *must* unless the answer of the defendant admits such previous convictions, *find whether or not he has suffered such previous conviction*. . . . If more than one previous conviction is charged a separate finding must be made as to each." (Emphasis added.)

Disregard of the statutes, in my opinion, deprives the public of that to which it is entitled, brings the court system into disrepute and hampers the administration of justice.

A petition for a rehearing was denied May 14, 1959, and appellant's petition for a hearing by the Supreme Court was denied June 18, 1959.