[Crim. No. 4043. Second Dist., Div. Two. Nov. 1, 1946.]

THE PEOPLE, Respondent, v. DONALD DAVIS et al., Appellants.

Wm. G. Junge for Appellants.

Robert W. Kenny, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

MOORE, P. J.—Having been accused by information of stealing a white-faced heifer, defendants were all convicted by the court, trial by jury having been expressly waived. Inasmuch as Lloyd Davis failed to prosecute his appeal, for convenience his codefendants only will be hereinafter referred to as appellants. They now urge the (1) insufficiency of the evidence, (2) want of proof of the corpus delicti and (3) failure to make a finding of grand theft as grounds for reversal.

Donald is a brother of Lloyd Davis. On April 12, 1945, with Robert Smith they drove in an automobile from Culver City along Coast Highway 101. Ostensibly they were out to hunt wild game but after reaching Ventura County they "got off the road back in the hills." While traveling down Decker Road in the vicinity of Hidden Valley they encountered a young bovine. With his Mauser rifle Donald shot the animal between the eyes. Working in the dark, with two hunting knives the trio severed the hind quarters and loaded them into their car. Just then one John Spiers, keeper of the boats at Lake Sherwood, approached the scene. It was 11 p. m. as Lloyd turned on his lights and, alone, drove rapidly up Carlysle Road. Having pursued the retreating car about two miles Spiers met it returning. He demanded an explanation of Lloyd and made an examination of the rear compartment where he found the rifle and the two blood-covered knives. Lloyd followed Spiers back to the home of Tom Moody, a fire captain, where they arrived at about 11:40. Leaving Lloyd in the custody of one Zeimer, Moody's assistant, the captain accompanied Spiers to the point where he had first observed the car of defendants and there discovered the forequarters of the calf. Moody then returned to his home and placed Lloyd under arrest.

In answer to the questions of the officer, Lloyd admitted ownership of the gun but denied knowledge of the knives or of the origin of the blood and hair on them. He asserted that he had picked up two sailors who had driven while he slept, only suddenly to awake to find that he was parked alone in a field. Officer Stephens, with Moody and John Meders, ranch superintendent of the Albertson Company, owner of the calf, then drove three miles over the course driven by Lloyd in his flight and discovered the hindquarters. The brand was identified by Meders and Mr. Albertson. Officer Foye proceeded then with Lloyd to the jail at Ventura, observing the boy's clothing covered with blood.

About 3:45 a. m. on Highway 101 Foye saw appellants hitchhiking, their trousers wet to the thighs. Having been apprehended at his radioed suggestion, they were immediately brought into consultation with their codefendant, Undersheriff Suytar and deputies of the district attorney. Their statements were taken on a recording machine. Lloyd stated that after the heifer had been killed and the three were load-

ing the hindquarters into the car the lights on Spiers' machine hove into view; that appellants promptly sought refuge in the wilds as he alone drove up the road and dumped his cargo at some distance from his course of travel and that as he was returning he was stopped by Spiers. The statements of appellants successively made to the officers were substantially the same as those made by Lloyd, except that Donald declared that he had shot the animal between the eyes with his rifle, and he and Smith with their knives "hacked off the hindquarters" and loaded them into their automobile, and that they wished to pay for the animal.

The foregoing is substantially the total of the evidence received at the examining trial, no objection having been interposed to any portion thereof. Each defendant stated to the court that he had no witness to testify in his behalf and did not desire to take the stand. Thus the evidence of their theft was complete in that it established their felonious taking of the personal property of another. (Pen. Code, § 484.) They were armed with a gun capable of killing a bovine and with knives of sufficient strength and sharpness to dissect its body. They drove in the nighttime into a rural region, the desolation of which was marred only by the victim of Donald's gun. They killed it and near midnight were surprised in the act of loading its hinder parts into a vehicle whereby they might speedily depart from the scene of their crime. Such facts, unsupported by a confession, evince a felonious intent to steal. However, they were emphasized by the voluntary statements made to the officials.

Appellants now contend that the animal was killed while they were hunting and the crime was therefore only a misdemeanor under section 384c, Penal Code. But that statute is a part of title X, having to do with "Crimes against the Public Health and Safety." Its purpose is to prevent the killing, maiming, or wounding of animals "while hunting upon the inclosed lands of another." Appellants were not hunting upon inclosed lands or at all. They were driving along an open country road at night when they deliberately killed the calf with gunfire and disemboweled and halved it on the spot.

Clearly the authors of the information accusing appellants had in mind the language of Penal Code, section 487. While section 484 makes it a theft to take the chattel of another with felonious intent, section 487 provides that if the

taking is "an automobile . . . any bovine animal . . . or pig" it is grand theft. For the purpose of overcoming that provision appellants assert that nothing was taken away by them, and that if there was any crime committed by Lloyd it was only a violation of section 488, a misdemeanor. By such contention appellants ignore section 487a which makes it grand theft feloniously to steal or transport the carcass of a bovine. That statute is a recent enactment, evidently designed to facilitate the conviction of those engaged in high-jacking and black-marketing. Prior to the enactment of section 487a in order to convict one of a felony for taking a carcass it was essential to prove that its value exceeded $200. Since the passage of that statute all offenders who take away any carcass are guilty of grand theft. But the conviction of appellants was not that of transporting the hindquarters from one point on an open road to a lonely spot off that road, but for taking away from its owner a bovine animal and depriving such owner of the use and property thereof. Such felonious taking may be done by leading, carrying or driving a bovine from its shelter or inclosure or from the public domain. Also, it may be taken from its owner's possession by removing it in pieces or by eating it or by cremating it with gasoline or an atomic bomb. Deprivation of a living bovine from the owner with felonious intent is grand theft under section 487, and that is exactly what appellants did to the owner of the white-faced heifer when they killed it on the dark Ventura County road. (*People* v. *Salorse,* 62 Cal. 139, 142.)

The assignment is made that the court erred in not requiring the introduction of the records of defendants' statements taken by the undersheriff and the prosecuting attorney. That question was not presented to the trial court. It cannot therefore be criticized for failing to do what it was not asked to do. The only evidence received by the trial court was that introduced in the justice's court. After the record made by the examining magistrate was by stipulation submitted to the superior court the latter could in no respect modify such record. It was as complete as appellants desired it to be. No law is known to this court which requires that the recording of an extrajudicial statement of an accused person be either transcribed or introduced. The testimony of competent witnesses to such utterances is sufficient to prove the fact.

The suggestion that the court failed to find that the crime was grand theft is negated by the judgment itself which implies such finding. Supporting the implication is the evidence of a midnight slaughter of a bovine without its owner's consent in a locale remote from the paths and haunts of law-abiding men.

Judgments affirmed.

McComb, J., and Wilson, J., concurred.