[Crim. No. 4298. Second Dist., Div. One. June 13, 1949.]

THE PEOPLE, Respondent, v. J. B. BROWN, Appellant.

Walter L. Gordon, Jr., for Appellant.

Fred N. Howser, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, defendant was charged with a violation of section 11500, Health and Safety Code, a felony, in that he did on or about April 14, 1948, have in his possession a preparation of heroin.

Following entry of a plea of not guilty and waiver of a jury, the cause proceeded to trial before the court, resulting in a decision adjudging the defendant guilty. Motion for a new trial was denied and defendant was sentenced to serve a term of one year in the county jail.

From the judgment of conviction and the order denying his motion for a new trial, defendant prosecutes this appeal.

Since the sole ground urged for a reversal is that the evidence was insufficient to sustain the judgment, it becomes necessary to set forth the evidence, which, narrated in the light most favorable to the prosecution, as it must be following an adjudication of guilt, reveals that on April 14, 1948, at

about 10:15 p.m. Police Officer A. M. Barr went to an apartment house located at 4309 South Main Street in the city of Los Angeles. Accompanied by Officer McKinnon, the witness proceeded to apartment 109, where he knocked on the door. Receiving no answer, he opened the door with a key. The two officers thereupon entered the apartment and commenced a search thereof. In a dressing room situated between the front room and the bathroom Officer Barr found a blue glass jar on a shelf. On top of the jar were two cuff buttons. He removed the cuff buttons, opened the jar and found therein a piece of newspaper. Unwrapping the newspaper, he discovered it contained a brown powder, a small portion of which turned red when he applied nitric acid. Thereupon, he rewrapped the paper containing the powder, placed it on top of the shelf under a hatbox, put the cover back on the glass jar and the two cuff buttons on top of it. Both officers then left the apartment.

Going to the rear of the apartment house, they "staked" themselves in the alley at a point from which they could look down the hallway and observe the only door to apartment 109. Here they waited, keeping this door under constant observation until about 11:10 p.m. the same evening, at which time they saw defendant enter the apartment. From the time the officers left the apartment they saw no one enter until the defendant himself entered. After a five-minute wait, Officer Barr knocked on the door and requested the defendant to open it. A voice from within inquired, "Who is it?" Officer Barr replied that it was "Bolie." Receiving no further answer, Officer Barr again knocked on the door, saying, "J. B., open up." Again the voice from within inquired, "Who is it?" and again the officer said it was "Bolie." Receiving no further answer and hearing some noise from within the apartment, Officer Barr again used his key and effected an entrance. At this time defendant was seated on a couch with a telephone in his hand. A search was made of the room and Officer Barr found the newspaper bindle in the same place he previously had placed it. At this time, he noted that the cuff buttons had been taken off the jar; that the cover had been removed therefrom; that numerous bottles which had previously been in an orderly position on the dressing table were moved; that a doily had been removed; that one lefthand drawer of the dressing table had been pulled open. Defendant was alone in the apartment.

Further search was made and a Los Angeles newspaper

dated April 13, 1948, was found, from which the lower right corner had been removed. The piece of newspaper in which the brown substance was wrapped fitted the torn corner of said newspaper. Also found in the apartment were two envelopes, identified by the officer as having been addressed to the defendant, together with a small green bottle. When quizzed by the officers, defendant denied any knowledge of the bindle, denied that he "snuffed" heroin, though his nostrils, according to the testimony of the officer, appeared inflamed at the time. Officer Barr then asked defendant if he thought the officers had planted the substance, to which he replied, "No, I know you didn't." Defendant was questioned concerning the whereabouts of his wife and stated that she did not live in the apartment any longer; that he did not know where she was; that the feminine clothing and the perfume in the apartment were not necessarily hers; and that his wife knew nothing about the bindle.

The officers marked the newspaper bindle for identification, placed it in a small manila envelope, which in turn was marked for identification, and sealed with red sealing wax on which Officer Barr placed his thumb print. The small envelope thus sealed was in turn placed in a larger manila envelope along with the other exhibits which also had been marked in Officer Barr's handwriting. This large envelope and contents were booked on the 15th day of April at the Police Crime Laboratory, 318 West First Street, at approximately 12:30 a.m.

The witness, Officer Barr, was shown a portion of People's Exhibit "A" for identification, namely a portion of a newspaper containing a substance which had previously been identified as heroin by Police Chemist Don Mann. Officer Barr recognized it as the newspaper bindle he took from defendant's apartment. He pointed out the identifying marks, viz., the initials of both officers, a notation of the time, apartment number and street address.

The expert qualifications of Police Chemist Don Mann were stipulated. He was shown an envelope and contents marked "People's Exhibit 'A' " for identification, and testified that he first saw the envelope when he received it from the property clerk at the police property division, 318 West First Street at 9 o'clock on the morning of April 15, at which time it was sealed with three red sealing wax seals on the back thereof. He took possession of the exhibit at that time. Breaking the outer seal and removing the middle seal, he opened the envelope and abstracted therefrom two small envelopes, a postal en-

velope and a newspaper. One of these envelopes contained a small bottle, the other a paper bindle containing a "brownish-white powder." His chemical analysis of this powder revealed that it was about one-half gram of a narcotic known as heroin. After making this analysis, the chemist kept the exhibit in his possession until it was by him brought to court. This exhibit was offered and received in evidence without objection.

Defendant testified in his own behalf that on the day he was arrested he had left his apartment about 2:30 o'clock in the afternoon; that he returned about 10 o'clock p.m.; that after he was home for about 30 or 40 minutes Officer Barr came into the apartment; that he (defendant) never saw the paper bindle before; that it was not his and he knew nothing about it; that he never had given Officer Barr a key to the apartment; that the only person to whom he had given a key was his wife; that on two or three previous occasions he had arrived home to find things in the apartment disturbed, but assumed that his wife was responsible for this.

On cross-examination defendant testified that he had disturbed nothing on the day in question; that he did not pick up his cuff links nor move anything on the bureau. He further testified that he was not separated from his wife and that she was living with him at the time he was arrested. According to the testimony of the defendant, his wife was at a theater when he was arrested but had been in the apartment when he left earlier in the day. It was also brought out on cross-examination that the defendant had been convicted of a felony in 1946 for violation of the so-called federal White Slave Act [36 Stats. 825 et seq.; 18 U.S.C.A. § 397 et seq.].

Testifying on behalf of the defendant, Rosie Haynes stated that she lived at 221 East 46th Street and that she saw Officer Barr there on April 14, 1948 (the date of defendant's arrest), at about 9:30 p.m., and that he left her home at 10:30 or 10:45 o'clock on the same night.

In rebuttal, Officer Barr admitted that he had been at the residence of the last mentioned witness on the evening in question but departed therefrom at about 9:30 p.m. He testified that he was able to fix the time because he had arrested a man in front of Rosie Haynes' house on a charge of "wildcat cabbing" and had taken him to the University Police Station where, according to the booking slip, Officer Barr and the man he had arrested arrived at 10:18 p.m.

Officer Barr testified that immediately after booking the

prisoner above mentioned he left the University Police Station and went directly to defendant's apartment which was about 2 miles away.

Appellant urges that the evidence is insufficient to support the judgment in two particulars, the first of which is that "There is no identification that a powder found in the apartment is the same that was testified to as being heroin." This contention is without merit. Officer Barr specifically testified, "Yes, this is the newspaper bindle I took from there. It bears my partner's and my initials, the time 11:15 p.m.; apartment 109, and 4309 South Main Street." This answer referred both to the newspaper and the heroin contained therein. The uncontradicted testimony hereinbefore narrated shows that Officer Barr sealed the bindle in an envelope, using red sealing wax, and making an imprint of his thumb thereon, and deposited it at the Police Crime Laboratory. Officer Mann, the police chemist, received the package some nine hours later from the police property clerk, made his examination, and kept the exhibit in his possession until he produced it in court.

When the exhibit was produced in court appellant had an opportunity to examine it for any signs that the same was tampered with, or to present any evidence, by way of cross-examination or otherwise, to that effect. The record discloses no objection by appellant either to the condition of the exhibit, or to the testimony of the police chemist. Such an objection cannot be raised for the first time on appeal (*People* v. *Reyes,* 133 Cal.App. 574, 577 [24 P.2d 531]).

For the same reasons, appellant's contention that the prosecution failed to prove that Officer Barr's thumb prints were on the seals broken by Chemist Mann must be rejected. Here again, he had an opportunity at the trial to examine the seals and compare the thumb prints, and cause a comparison to be made. Where the proffered evidence is allegedly imperfect because of the lack of preliminary proof, which might or might not have been supplied by the party offering such evidence, a specific objection must be made at the trial, pointing out the claimed defect. If this is not done, the objection cannot be urged on appeal (*People* v. *Duffy,* 110 Cal.App. 631, 636 [294 P. 496]). Since the evidence was legally sufficient to identify the substance in question as the same as that taken from appellant's apartment beyond the realm of mere speculation or surmise, and since it was admitted into evidence without objection, its weight was a matter for determination by the trier of fact. (*People* v. *Salas,* 17 Cal.App.2d

75, 77 [61 P.2d 771].) An appellate tribunal is not authorized to consider the weight of the evidence unless it can be said to amount to no substantial evidence whatever warranting an inference of guilt (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]).

The second particular wherein appellant contends that the evidence fails to support the judgment is that it "shows that someone else had access to the apartment." The record reflects that three persons had access to the apartment, namely, appellant, his wife and Officer Barr. The officer's access thereto may be eliminated for it cannot be assumed that he utilized such access other than in the performance of his official duty (Code Civ. Proc., § 1963, subd. 15).

Though appellant's wife had a key, it was shown by his admission that she no longer lived at the apartment in question. True, appellant denied this fact at the trial, but such denial operated only to raise a conflict in the evidence. This conflict was resolved in favor of the prosecution by the trial judge, and will not therefore, be overturned on appeal (*People* v. *Dant*, 68 Cal.App. 588, 591 [229 P. 983]; *People* v. *Campbell*, 80 Cal.App.2d 798, 800 [182 P.2d 626]; *People* v. *Yankee*, 79 Cal.App.2d 431, 435 [179 P.2d 582]).

In the instant case there is also the positive testimony of the officers that upon their first visit to the appellant's apartment, they replaced the jar with the cuff links on top thereof and departed; that they had the apartment under observation at all times until they returned; that no one other than appellant entered the apartment during that time; that when the officers returned to the apartment and encountered appellant, the jar in question had been opened and the cuff links removed. This testimony alone warrants an inference of appellant's knowledge and possession of the narcotic in question. That is to say, an "immediate and exclusive possession and one under the dominion and control of defendant" (*People* v. *Gory*, 28 Cal.2d 450, 455 [170 P.2d 433]; *People* v. *Hoff*, 84 Cal.App.2d 398, 400 [190 P.2d 616]). Appellant's contention that he had no knowledge of the presence of the heroin in his apartment merely created, at most, a conflict with the prima facie case made out by the prosecution. This defense was for the consideration of the trial judge.

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Doran, J., and Drapeau, J., concurred.