[Crim. No. 4492. Second Dist., Div. Two. Dec. 8, 1950.]

THE PEOPLE, Respondent, v. MILTON T. SHAFER, Appellant.

A. Brigham Rose for Appellant.

Fred N. Howser, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was duly convicted of having had in his possession a preparation of heroin. Of the judgment and of the order denying his motion for a new trial he demands a reversal on the grounds of the insufficiency of the evidence to warrant a conviction; denial of due process of law; abuse of discretion in refusing to grant his motion for a new trial.

### PEOPLE'S PROOF

Three police officers of the city of Los Angeles were sitting in a car of the police department, parked on a city street. While they were interrogating a suspect but recently apprehended appellant drove past in a Cadillac sedan, turned right at the nearby intersection and traveled about 50 yards when he parked. He was there overtaken by the three officers. He moved to the right side attempting to leave his conveyance when he was assisted by Officer Lehman as Officer Martin held open the door. As appellant alighted Martin entered and saw two white capsules on the right side of the front seat rolling toward the back. Lehman then turned appellant around to "let him see what was being recovered." The capsules had been stopped by Martin who put them in his pocket. When they arrived at the police station Martin placed the capsules intact in an envelope which he initialed. That container was in turn inserted in a larger envelope, sealed with sealing wax and impressed with Martin's thumb. It was deposited in the central property room of the police department.

Appellant denied all knowledge of the capsules and stated that he had heard "from sources in town that someone was going to get him and he guessed that this was it." A police report was made indicating that Martin removed the front seat and located the evidence in the car, but Martin testified that such statement was error on the part of Lehman who prepared the report. The Cadillac car was taken to the police garage where appellant stated to Officers Triggs and Lehman "that impounding his automobile, the bond, and the attorney's fee would be worth a lot of money, and it would be worth $1000" if the officers would forget what they saw. He told Officer Triggs that maybe someone was standing on the corner who might have thrown the capsules into the window while he was passing. However, the window was closed.

The manila envelopes which were identified by Officer Martin as those containing the capsules taken from the Cadillac

were delivered to the witness Mann, an expert in chemistry. He took them to the police crime laboratory where he removed the seal and examined the whitish powder taken from the two gelatine capsules. He found the powder in each to be heroin, a derivative of morphine. He retained possession of them in the laboratory until he took them to the preliminary trial. He explained the tests whereby he determined the powder taken from the two capsules to be heroin which he declared to be "diacetic acid asperate morphine."

## Appellant's Proof

The evidence introduced on behalf of appellant was his own testimony and that of one Robert Williams. The latter was the suspect in custody of the officers at the time appellant drove by them. He had been taken by the officers a short distance from the point where they arrested appellant. He testified that at the time appellant approached the police car in which he (the witness) was held by the officers, they all said, "Get out of the car, get out of the car, here comes Shafer." Williams had known appellant previously; had been in his office a year before; had been convicted of a felony. Appellant testified that he was on his way to an apartment house on business when arrested by the officers. He identified the police car by its red light. He did not know he was being pursued when he parked. He locked his left door, removed his key, moved to the right side and opened the door. He was there met by Officer Lehman who pulled him out and searched him while standing with his back to his automobile and about four feet from its front door. Lehman removed the contents from all his pockets, inspected and returned his wallet. At that instant Martin came up out of the car with his right hand open. The seat had been pulled out about six inches. Martin held capsules in his right hand but appellant saw none on the seat. When they showed him the capsules, he said, "They are not mine, either you put them in there or somebody planted them there." He denied (1) having ever seen the capsules prior to their display by Martin; (2) having said that "it would be worth $1000 to me to have you forget the whole thing" or anything to that effect; (3) having ever seen the witness Williams until the day before he testified when he observed him in the jail through the "glass window in the door." No one other than himself had driven his car on the day of his arrest.

58

■ The evidence is abundant to support the conviction. On appeal the evidence is not to be weighed or compared. ■ Whether the denials of the accused or his self-serving declarations to his accusers were sufficient to overcome the effect of the testimony introduced against him was a matter strictly and peculiarly for the trial court's determination. ■ The testimony of the three officers that they took the capsules from appellant's automobile practically at the moment he left it; that they were kept intact in the police laboratory until delivered to the chemist; that by an orthodox scientific test they were found to be heroin, a narcotic, was when believed by the trial court sufficient proof that appellant had violated section 11500 of the Health and Safety Code. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Todd,* 91 Cal.App.2d 669, 670 [205 P.2d 453].) This rule applies with equal force without regard to the quantity of evidence opposed to that which supports the judgment. (*People* v. *Dant,* 68 Cal.App. 588, 591 [229 P. 983].) ■ The proof that the capsules were on the seat just abandoned by appellant justifies the inference that he wilfully had possession of them while in the machine. (*People* v. *Gory,* 28 Cal.2d 450, 455 [170 P.2d 433]; *People* v. *One 1941 Buick,* 28 Cal.2d 692, 695 [171 P.2d 719]; *People* v. *Hoff,* 84 Cal.App.2d 398, 400 [190 P.2d 616]; *People* v. *Brown,* 92 Cal.App.2d 360, 366 [206 P.2d 1095]; *People* v. *Torres,* 98 Cal.App.2d 189, 192 [219 P.2d 480].)

■ Appellant demands a reversal because the trial judge in summing up the evidence stated, ''if I were to decide this case that the defendant were not guilty, I would, of course, be determining on the question of credibility of his testimony as against the testimony of the three police officers that testified.'' Such statement, appellant contends, indicates ''that the trial court deemed himself plagued with the responsibility of passing on the credibility of three police officers.'' From this proposition appellant jumps to the conclusion ''that the trial court did not base his verdict on the evidence and manifestly was seeking to compromise between his disagreeable duty to find that the officers were manifestly lying and to impose a probationary sentence on appellant.'' To such argument the reply is that the remarks of the judge in deciding a case constitute no part of the record and cannot impeach his judgment or his finding. (*Stone* v. *Los Angeles County Flood Control Dist.,* 81 Cal.App.2d 902, 907 [185 P.2d 396].)

 Appellant cites no authority to support his claim that the evidence is insufficient as against the holding of *People* v. *Newland, supra.* Nothing is mysterious about the conviction. For a court to take the testimony of arresting officers as against that of the person accused is a daily occurrence in every city in America. If the prosecution were compelled to call in a host of private citizens or even one to substantiate the testimony of law-enforcing agencies the state would become a bedlam and enforcement would become impossible. Officers are men employed, appointed or elected by reason of their intelligence and good moral character. Their mission is to detect and prevent crime. They are faithless if they make no effort to do so merely because they have not a cloud of witnesses to the crime they see enacted. They may make an arrest whenever they have good reason to believe a felony has been committed. (Pen. Code, § 836.) When they are efficient and conscientious they do so wherever they find a criminal in the commission of his offense. When they come into court to give their testimony of events they have witnessed, even though the circumstances of the detection and arrest were unusual, they are not on that account to be discredited; neither is the accused necessarily to be believed. (*People* v. *Klinkenberg,* 90 Cal.App.2d 608, 627 [204 P.2d 47, 613].) His testimony may be rejected if in the opinion of the trial court it is overcome by facts otherwise established. (*People* v. *Borrego,* 211 Cal. 759, 765 [297 P. 17].) Whether the officers here involved are honest and veracious was for the determination of the trial judge. That their police report contained matters inconsistent with their testimony does not overcome the court's finding. (*People* v. *Newland, supra*; *People* v. *Lee,* 125 Cal.App. 709, 713 [13 P.2d 943].) It is the function of the trial court to screen the truth from all the proof even though the witnesses whose testimony prevails may have said words or done acts contrary to their adopted evidence.

 It is contended that appellant was denied due process of law in that he was not allowed to have his own chemist test the substance contained in the capsules. There is no authority for such contention, so long as he is confronted by the witnesses against him. The character of tests applied by the police chemist to the powder was described by him on the witness stand. The court was by no legal doctrine or rule inhibited from believing the chemist's testimony that

the substance was heroin. (*People* v. *Brown*, 92 Cal.App.2d 360, 365 [206 P.2d 1095].) In view of such testimony the presence of the capsules in court was not essential to a fair trial. (Code Civ. Proc., § 1954; *People* v. *Anderson*, 87 Cal. App.2d 857, 861 [197 P.2d 839].) It is, of course, unfortunate that the capsules were not brought to court intact. It appears that at some time after the preliminary hearing the capsules were crushed in the office of the county clerk. After that occurrence a test might still have been applied. Under the testimony believed by the court the envelope contained the remains of the capsules and their contents. That appellant chose not to have his own chemist make another test disposes of the question of want of due process. (See *People* v. *Davis*, 76 Cal.App.2d 701, 705 [173 P.2d 833]; *People* v. *Valencia*, 32 Cal.App. 631, 632 [163 P. 865].) Appellant owes his complaint to either his studied choice to stand on the testimony of Officer Mann or his neglect to obtain that of another. The capsules were intact before and at the time of the preliminary hearing on October 27, 1949, and presumably for a time thereafter. Just when they were crushed is not established, but if appellant had entertained a serious doubt as to their rolling down the seat of the car, as testified by Martin, chemical analysis and inspection and gravitational tests might have been undertaken either before or after the examining trial. His failure to request the district attorney to cooperate or to seek an order from the court in order to effect such tests must be deemed to indicate that he had no desire to do so. (*People* v. *Davis, supra*; *People* v. *Valencia*, 32 Cal. App. 631, 632 [163 P. 865].)

 Appellant filed his motion for a new trial and supported it with his own affidavit whereby he undertook to establish that the testimony of the officers as to the time consumed while the capsules rolled down the seat of the automobile is incredible and that it was contradicted by the police report which declared that "officer Martin had removed the front seat and located the evidence." Both recitals are in the evidence. If despite their contradictions the court believed the officers recovered the drug from his car at the time of his arrest the requirements of the law have been fulfilled. Appellant asserts that to deny a new trial under such circumstances would be to declare a new doctrine, to wit: "Where a person is accused of a crime it is not necessary to produce the real evidence to establish the offense alleged." The latter is an assumption on the part of appellant. He

cites no authority. His failure to specify the prejudicial feature of the evidence must be taken to mean that there is none. (*People* v. *Britton,* 6 Cal.2d 10, 13 [56 P.2d 491]; *People* v. *Hermes,* 73 Cal.App.2d 947, 950 [168 P.2d 44].) Also, his failure to cite authority for his contention signifies that none is available.

However, appellant supports his motion with two other affidavits of one Koster and one Shields. Koster is a chemist who filled a number of capsules containing a substance of a molecular weight comparable to that of heroin. Mr. Shields, a civil engineer, performed certain experiments with the same capsules for the purpose of testifying to the length of time necessarily consumed for the several capsules to roll down the Cadillac seat. There was no reason why in the exercise of its discretion the trial court should have been required to grant a new trial upon such affidavits. Appellant knew a chemist would testify at the trial for the People and that the three officers would give the same testimony they had given at the preliminary hearing. By the exercise of reasonable diligence he could have had his witnesses in court to rebut the People's proof. Since the proposed evidence was not newly discovered, since due diligence was not shown and since discretion was not abused the denial of appellant's motion was not prejudicial error. (*People* v. *Dye,* 81 Cal.App.2d 952, 964 [185 P.2d 624]; *People* v. *Lindsey,* 90 Cal.App. 2d 558, 567 [203 P.2d 572]; *People* v. *D'Elia,* 73 Cal.App. 2d 764, 767 [167 P.2d 253]; *People* v. *Yankee,* 79 Cal.App.2d 431, 436 [179 P.2d 582].)

The judgment and the order denying the motion for a new trial are affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied December 19, 1950, and appellant's petition for a hearing by the Supreme Court was denied January 5, 1951.