[Crim. No. 7731. Second Dist., Div. Two. Dec. 28, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY
GEORGE MUNOZ, Defendant and Appellant.

Irving S. Feffer, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant was indicted for violation of section 11501, Health and Safety Code (selling heroin). He was convicted of possession of heroin (Health & Saf. Code, § 11500), a lesser but necessarily included offense. He has appealed from the judgment.

On August 23, 1961, Richard Sanchez, a police officer of the City of Los Angeles, was assigned to the Narcotics Division as an undercover agent and engaged in a buying program of narcotics. On this particular occasion the officer was accompanied by a person known to him as "John Able," who saw defendant near the northeast corner of Sixth and Broadway in Los Angeles. Able and the officer walked up to defendant; Able struck up a conversation with him, which disclosed that they had known one another some years previously when both were in the Preston School of Industry. Defendant then inquired of the officer and Able "if we would like to score." Able replied, "Yes, I would like to get a half." Defendant then stated that he would get some for them; he knew where to get it. The officer gave defendant a 10 dollar bill. He left for approximately five minutes, saying he was going to make a telephone call. He returned with two male Negroes. They

all entered the officer's car and defendant directed him to drive to 4th and Mott Streets. After parking in that vicinity, the defendant left the car and in a few minutes Able and the two Negroes also left. They all returned later, at which time the two Negroes demanded the return of $10 from defendant which they had previously given to him, stating that "they didn't want to deal with him." The group drove to 4th and Pecan Streets, where the two Negroes left them. The officer drove back to 4th and Mott Streets, where defendant left the car for a few minutes. Upon his return defendant directed Officer Sanchez to drive to 7th and Towne where, just before he left the car, he laid a red balloon on the seat next to the officer. Three capsules were in the balloon. The officer took it to the Police Administration Building, where he placed his initials on the balloon and on each of the capsules, and placed the balloon and capsules in a small jar, putting his initials and the date on the inner lid of the jar. The officer put the jar and its contents into a large, Manila envelope and sealed it. Witness Miller, a forensic chemist for the police department, examined the envelope and its contents and determined that the capsules contained heroin.

The defendant's testimony regarding these events was to the effect that Able asked him to "score for him," and told defendant if he would score for him (Able) he would give him a fix. Defendant enumerated the various places to which they went in an effort to secure heroin but without success. Defendant claimed that he returned the $10 that Able (rather than the officer) had initially given him. According to defendant, he and Able went on another search for contraband; that Able told him to wait at Third and Saratoga Streets, while he went on to Second Street; that Able returned in approximately a half hour and said he "scored." They then went to the car and told Officer Sanchez that they wanted to go to 7th and Towne. Upon arrival there, Able and defendant got out of the car; they went up to a room and, according to defendant, Able "shot two caps," and defendant also "shot two caps"; that Able kept one cap saying he had to give it to his cousin; that Able then departed.

In seeking a reversal defendant's first contention is that the trial court erred in permitting a conviction since the prosecution did not introduce the heroin in evidence. The fact of defendant's possession of the narcotic was shown to the court through the testimony of Officer Sanchez, who stated that defendant laid a red balloon containing three

capsules on the seat of the car next to him; that these capsules were identified by his initials, that he placed them in a jar which, in turn, was placed in a sealed envelope and delivered to the police department. L. B. Miller, the department's forensic chemist, examined the contents and testified at the Grand Jury hearing that the capsules contained heroin. Miller's testimony by stipulation was read into the record at the trial. This was sufficient proof that defendant had violated section 11500, Health and Safety Code. (*People* v. *Shafer*, 101 Cal.App.2d 54 [224 P.2d 778]; *People* v. *Anderson*, 87 Cal.App.2d 857 [197 P.2d 839].) In the *Shafer* case, which was also a charge of possessing heroin, the court held that the testimony of the officers that they acquired capsules and that they were found to contain heroin, was sufficient proof that defendant had violated the statute. The court stated (p. 60): "In view of such testimony the presence of the capsules in court was not essential to a fair trial." In the *Anderson* case, the argument was made that there was no evidence to support the trial court's finding that defendant was armed with a deadly weapon because the gun used in the crime was not introduced in evidence. ▮ The court held, however, that "[i]n order to sustain a conviction predicated upon the use of a material object in the commission of a crime it is not necessary that such object itself be introduced in evidence." (P. 861.)

▮ Applying the principles of these cases, it is apparent that a sufficient showing was made of defendant's possession of the heroin, even though it was not formally introduced in evidence.

▮ In his reply brief defendant also contends that the prosecution failed to link the capsules brought to police headquarters by the officer to the capsules examined by the police chemist and failed to show that the latter were the same capsules examined in the courtroom by Officer Sanchez; that there was no showing that the evidence was kept intact and was the same evidence examined throughout the proceedings.

Although the exhibit containing the balloon and three capsules was not formally introduced in evidence, it was physically in the courtroom during the trial and its contents were fully described by Officer Sanchez including the fact that he placed his initials on each of the capsules and on the balloon, and also his initials and the date on the inner lid of the jar. He placed these items in a large Manila envelope which he sealed and which he recognized and identified at the trial.

With the approval of the trial judge, the exhibit number was kept the same in the trial court, as at the hearing before the Grand Jury. This envelope and its contents were brought to the Grand Jury hearing by Mr. Miller, the police department chemist, and there marked "Exhibit 26-1." It was from the contents of this exhibit that he testified the capsules contained heroin. It is this same exhibit and its contents that Officer Sanchez examined and described, including his markings on the various items in the Manila envelope, while on the witness stand at the trial. Bearing in mind the presumption that "official duty has been regularly performed" (Code Civ. Proc., § 1963 subd. 15), the evidence amply supports an inference that the capsules left by defendant on the seat of the car next to the officer were the same capsules that the police chemist examined and the same ones that Officer Sanchez examined and described at the trial.

Defendant's next contention is that Officer Sanchez was an accomplice and aided and abetted in the commission of the crime on the theory that he entered into a conspiracy to purchase heroin, and therefore the trial court erred in finding the defendant guilty on the uncorroborated testimony of the officer.

"To be an accomplice one must knowingly, voluntarily, and with common intent unite with the principal offender in the commission of the crime." (*People* v. *Lamb*, 134 Cal.App.2d 582, 585 [285 P.2d 941]. Accord, *People* v. *Shaw*, 17 Cal.2d 778, 799 [112 P.2d 241]; *People* v. *Frahm*, 107 Cal.App. 253, 263 [290 P. 678].) "Whenever the commission of a crime by one person involves the co-operation of another person, the latter becomes an accomplice only in the event that his co-operation in the commission of the crime is corrupt." (*People* v. *Keseling*, 35 Cal.App. 501, 504 [170 P. 627]; *People* v. *Sanders*, 181 Cal.App.2d 677, 681 [5 Cal. Rptr. 498].) Also, "It is well established that merely engaging in a scheme for the purpose of detecting, exposing, and punishing crime does not constitute one an accomplice whose testimony requires corroboration." (*People* v. *Spaulding*, 81 Cal.App. 615, 617 [254 P. 614]. Accord, *People* v. *Calvert*, 93 Cal.App. 568, 572 [269 P. 969], and *People* v. *Sanders, supra.*) In this connection it should also be noted that section 1111, Penal Code, defines an accomplice as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." Also, section 11710,

Health and Safety Code, provides: "All duly authorized peace officers, while investigating violations of this division [on narcotics] in performance of their official duties, and any person working under their immediate direction, supervision or instruction, are immune from prosecution under this division." Analysis of the evidence discloses that there was no "common intent" (*People* v. *Lamb, supra*) between defendant and Officer Sanchez, nor did they "unite" (*People* v. *Lamb, supra*) in the commission of the crime involved. Sanchez was a police officer assigned to the Narcotics Division and "engaged in a buying program of narcotics" in connection with that assignment. On the occasion here in question he was so engaged. A criminal conspiracy may be defined generally as "an agreement or criminal partnership, the design and object of which is to do an unlawful act or a series of unlawful acts accompanied by an overt act to effect the object of such agreement; . . ." (*People* v. *Lyon,* 135 Cal.App.2d 558, 575 [288 P.2d 57].) It is readily apparent from the record that the officer did not have any objective or design to do any unlawful acts. The testimony of the officer, which was accepted by the trial court, clearly shows that he was at all times pursuing his assignment in attempting to catch up with the traffickers in narcotics. Officer Sanchez related that his companion Able engaged defendant in conversation and that defendant inquired if they would like to "score," stating that he could get "some" for them. The officer gave defendant a $10 bill, with the result that after several trips defendant laid a red balloon on the seat next to Officer Sanchez and departed. In it were three capsules containing contraband.

The fact that the officer drove defendant to different locations in the latter's search for narcotics does not, as defendant contends, show that the officer went beyond the normal scope of his duties; on the contrary, this was merely part of his "scheme for the purpose of detecting, exposing and punishing crime." (*People* v. *Spaulding, supra*.) The officer was simply providing transportation to defendant to enable him to carry out his offer to furnish the narcotic.

 Furthermore, since Officer Sanchez was a duly authorized police officer in the performance of his official duty of investigating narcotic traffic, he was immune from prosecution. (Health & Saf. Code, § 11710.) Therefore, Sanchez could not be an accomplice within the meaning of section 1111, Penal Code, since an accomplice is defined there as one who

is liable for prosecution for the offense charged against the defendant. (See *People* v. *Nunn,* 46 Cal.2d 460, 470 [296 P.2d 813].)

 Defendant suggests that, because of his conduct, Officer Sanchez aided and abetted in the commission of the offense. ''To 'abet' another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting or aiding the commission of such criminal offense.'' (*People* v. *Best,* 43 Cal.App.2d 100, 105 [110 P.2d 504]) or ''aid with guilty knowledge of the wrongful purpose of the perpetrator.'' (*People* v. *Goldstein,* 146 Cal. App.2d 268, 273 [203 P.2d 892].) The above factual outline of the officer's testimony clearly supports an implied finding on the part of the trial judge that the officer was merely performing his assigned official duty and was not carrying on his activities with any ''consciousness of guilt'' (*People* v. *Best, supra*) or with a ''guilty knowledge'' (*People* v. *Goldstein, supra*) of the wrongful purpose and therefore was not properly considered an accomplice.

 Defendant's final argument is that the trial court erred in not recognizing the defense of entrapment. On this subject the court in *People* v. *Braddock,* 41 Cal.2d 794 [264 P.2d 521], at page 802, approved the following statement of the law: '' 'Where the doing of an act is a crime, regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of the accused and the offense is completed, the fact that an opportunity was furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense. [Citations.] If the officer uses no more persuasion than is necessary to an ordinary sale, and the accused is ready and willing to make the sale, there is no entrapment.' '' (Accord, *People* v. *Beccera,* 175 Cal.App.2d 53, 55 [345 P.2d 269].) '' [W]here an accused has a preexisting criminal intent, the fact that when solicited by a decoy he commits a crime, raises no inference of unlawful entrapment.'' (*People* v. *Nunn,* 46 Cal.2d 460, 471 [296 P.2d 813].) Persuasion or allurement must be utilized to establish entrapment. (*People* v. *Schwartz,* 109 Cal.App.2d 450, 454 [240 P.2d 1024].) It will be recalled that soon after the officer and his companion met the defendant, the latter opened up the subject of narcotics by asking if they would like to ''score''; that he ''would get some for'' them, and that ''he knew where to get it.'' Neither

the officer nor Able asked the defendant initially to get them any narcotics. In such circumstances the criminal intent cannot be said to have originated in any other than defendant's mind. Certainly, no "persuasion or allurement" was utilized. Later defendant placed a balloon, with three capsules containing heroin, on the seat of the car next to the officer. Defendant's obvious familiarity with the illicit narcotics trade, as indicated by his conversation with the officer and Able in connection with "scoring," coupled with his ability to procure heroin, clearly indicate that he was not an innocent person who was induced to commit the crime charged by the persuasion or allurement of the officer or his companion. (*People* v. *Schwartz, supra.*) As stated in *People* v. *Benford,* 53 Cal.2d 1, 13, footnote 5 [345 P.2d 928]: "We cannot assume, in the face of the presumptions of innocence of wrong, regular performance of official duty, and obedience to law [citations] that the officer's dealings with defendant had as their purpose the manufacturing rather than the investigation of crime." On the contrary, Officer Sanchez and his companion merely "furnished the opportunity" for defendant to acquire the heroin. Their activities simply presented a plan of operation to uncover narcotic violators. The trial judge was justified in impliedly finding from the evidence that the criminal intent originated in the mind of defendant, and therefore the mere fact that he was solicited by a decoy to commit the crime and was driven around to various places in his search for the contraband, raises no inference of an unlawful entrapment.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.