30 Cal.Rptr. 574]

[Crim. No. 3380.   Third Dist.   May 8, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JULES J. PEDESCLAUX, Defendant and Appellant.

(1)

Walter Cook, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and John L. Giordano, Deputy Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—Jules J. Pedesclaux and a codefendant were found to be guilty by a jury of the crime of robbery. Pedesclaux has appealed from the judgment entered.

The facts as shown by the record are as follows:

The victim, Hing Kung, lived in Locke, California. On April 29, 1962, he went to Stockton, California, from Sacramento, California, and took a room at the MacArthur Hotel on Lafayette Street.

He got up the next morning about 3:30 a.m. and went out to try to find a job. He left the hotel carrying on his person $2 in folding money in one pocket and fifty cents, a nickel and a penny in a green coin purse, nail clippers and two keys in the other.

He left the hotel and started to walk down Lafayette Street. Douglas Foster and Jules J. Pedesclaux were standing on the south side of Lafayette Street. As he started walking the victim heard Foster and Pedesclaux say, "Let's get that guy!"

They ran toward the victim. Foster and appellant Pedesclaux grabbed the victim, one on each side, and Foster held a knife to the victim's throat while he and the appellant went through his pockets.

They took the victim's possessions from him, which consisted of two $1 bills, a fifty-cent piece, a nickel and a penny, a green leather coin purse, two keys and a pair of nail clippers. Then they let him go.

At that moment the victim spotted a cruising police car about a third of a block away and started running toward it, waving his arms and saying, "Help, help, they just robbed me."

While he was saying, "they just robbed me," he turned and motioned toward the sidewalk on the south side of Lafayette Street. The two policemen saw the two defendants standing there.

Officer Henderson, who was driving the car, swung it around in front of the Grand Hotel which Foster had entered on a dead run. Officer Johnson immediately jumped out of the car. He ordered appellant who was trying to sneak away to halt and ran into the Grand Hotel. When he brought Foster back, he found the appellant in the custody

of Officer Henderson. They conducted a search and found a knife on Foster. They searched the area and found two $1 bills, a fifty-cent piece, a green coin purse containing one nickel, and a key ring or key chain with finger nail clippers and two keys on it on the ground in the gutter.

Appellant testifying in his own defense claimed that he was walking down Lafayette Street to Eliot's Cafe, having just left the Grand Hotel where he was living at the time, when he saw the victim mumbling to himself and shaking his hands. Appellant said he stopped and watched him. He thought he was drunk.

Appellant claimed he heard the man saying that someone had robbed him and he was pointing at the appellant. The next thing he knew a squad car pulled up and Officer Johnson jumped out of the car. The appellant moved out of his way and Johnson ran right by him. Appellant started walking back to where he came from and then Officer Henderson stopped him. Appellant asked him, "What's the matter, Officer?" He was arrested and taken to the police station.

Appellant does not contend that the evidence was insufficient to sustain the conviction but contends that a number of instructions given by the court were prejudicially erroneous.

██ He first contends that the court erred in giving the second paragraph of the following instructions:

"All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission, or who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof.

"(One who does not actively commit the offense, but who aids, promotes, or encourages its commission either by act or counsel or both, is not deemed by law to be guilty and shall not be found guilty of the crime unless he did what he did knowingly and with criminal intent. To abet another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting, or aiding the commission of such criminal offense.)"

"For one person to aid and abet another in the commission of a criminal offense means to knowingly and with criminal intent aid, promote, encourage or instigate by act or counsel, or by both act and counsel, the commission of such offense."

· Appellant claims that that portion of the quoted instruction

defining the word "abet" was erroneous because of the use of the disjunctive "or" before the words "aiding the commission of such criminal offense." Appellant contends that this instruction permitted the jury to find him guilty if he merely aided his codefendant.

The instruction was not improper. The definition has been accepted in *People* v. *Munoz,* 198 Cal.App.2d 649 [18 Cal. Rptr. 82], and *People* v. *Best,* 43 Cal.App.2d 100, 105 [110 P.2d 504]. Any one of the acts set forth would suffice. If, as appellant contends, the conjunctive should have been used, the jury would have had to find all the acts set forth, which would have been an improper test.

Appellant contends also that the court erred in failing to instruct the jury that an aider and abettor must have been present at the time of the alleged offense. This contention is without merit. This is not necessarily true as constructive presence is sufficient. In this case there is no question as to the presence of the appellant at the scene so it could not have been error not to have given the instruction.

Furthermore, the general rule that the jury in a criminal case should be instructed on general principles of law pertinent to the case is not applicable to specific points developed during the trial and, unless instructions as to these specific points are requested by the party desiring them, it is not incumbent on the court to give such instructions on its own motion where the jury is otherwise fully and fairly instructed on the general principles of law involved in the case. (*People* v. *Turville,* 51 Cal.2d 620 [335 P.2d 678].)

Whether a person shown to have been present at the time and place of the commission of a crime aided and abetted therein is a question of fact for the jury to decide from the circumstances proved. (*People* v. *Perez,* 169 Cal.App.2d 473 [337 P.2d 539]; *People* v. *Esparza,* 182 Cal.App.2d 656 [6 Cal.Rptr. 568].)

Appellant also contends the court committed error in giving the following instruction: "When two . . . persons participate in committing the crime of robbery, if one of them has in his possession a dangerous or deadly weapon while engaged in the robbery, such possession constitutes a possession of the weapon by the other. . . ."

Appellant objects because the word "participate" was not defined and the failure to explain the meaning of the word to the jury may, he claims, have confused them. This contention is without merit. We may assume the jury was pos-

sessed of normal intelligence and that the meaning of the word was clear to the individual members.

▉ Appellant also challenges the following paragraph of a standard instruction dealing with the credibility of a witness: "However, discrepancies in a witness's testimony or between his testimony and that of others, if there were any, do not necessarily mean that the witness should be discredited. Failure of recollection is a common experience, and innocent misrecollection is not uncommon. It is a fact, also, that two persons witnessing an incident or transaction often will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance." (This paragraph is part of CALJIC No. 52, rev.)

No error was committed by the court in giving this instruction. As stated in the case of *Dodds* v. *Stellar,* 77 Cal.App.2d 411 [175 P.2d 607], at page 426: "Referring to another instruction appellant complains that the court unduly minimized the vice of failure of recollection of a witness. The instruction upon the measure of credibility and discrepancies in a witness' testimony does not vitally differ from the customary instruction upon that subject. While 'failure of recollection is a common experience and innocent misrecollection is not uncommon' might be regarded as a gratuitous observation, it is nevertheless a truism and is harmless. No authority is known that denounces such a comment as prejudicial."

▉ Objection is also made because during the cross-examination of Hing Kung on the length of the knife used by the robber the trial judge said: "Get the ruler, we'll satisfy you. We'll find out whether these defendants were wearing neckties and the color of their shoes, too."

This remark by the court was made by the court at the time appellant's counsel was having considerable difficulty in finding out the length of the knife blade from the witness. The court was no doubt actuated by a desire to shorten the testimony and was perhaps a bit impatient. However, no objection was made to the court's remarks, and the rule is that any objections to a remark of the trial judge will not ordinarily be considered on appeal unless an objection has been made and the trial judge has been given an opportunity to correct the error. (*People* v. *Kuykendall,* 170 Cal.App.2d 250 [338 P.2d 574]; *People* v. *Brown,* 200 Cal.App.2d 111 [19 Cal.Rptr. 36].) The remarks of the trial judge were

hardly prejudicial and were certainly not of such nature that any prejudicial effect could not have been corrected by a statement to the jury. Accordingly, the usual rule should be applied.

■ Appellant also contends that the above quoted remark of the judge, combined with a remark of the district attorney in his argument to the jury as to the length of the blade, coupled with the instruction as to credibility of a witness, was prejudicial because "the jury would infer that any inconsistency in the testimony of this witness amounted to trivia only, and thereby tended to remove from the jury its sole right and duty to weigh the testimony." But the jury was fully and correctly instructed as to its duty and we must assume it followed its duty.

■ Equally without merit is the further contention of appellant that the court erred in stating in its instruction on specific intent: "[A] necessary element is the existence in the mind of the perpetrators of the specific intent to permanently deprive the owner of his property. . . ." Appellant claims the word "minds" should have been used. We do not believe that appellant was prejudiced by the failure to use the word "minds." The singular word "mind" could not have misled the jury.

There was evidence that appellant and his codefendant both committed the robbery. If the jury accepted this view, it would be necessary to find that appellant, too, had a specific intent to permanently deprive the victim of his property before it could convict him. The evidence would support a finding that appellant was directly involved in the commission of the act and, if so, he would have to have the required specific intent.

Furthermore, the jurors were instructed that they must decide separately the guilt or innocence of the two defendants, and therefore they must have understood that specific intent was something they would have to determine separately as to each defendant.

Following the filing of the opening brief by the counsel appointed by this court to represent appellant, we received a letter from said counsel in which he stated: "Appellant has requested the undersigned to raise three points on appeal, to wit: 1. Perjury, in that the chief prosecution witness testified at the trial differently than at the Preliminary Hearing; 2. Inadequate representation, in that the Public Defender represented both defendants, constituting a conflict of interest, and that the chief prosecution witness was not impeached

by his testimony at the preliminary hearing; 3. Appellant states that the chief prosecution witness was prompted into identification of defendant, constituting "Extra-judic Identification."

Said counsel then requested this court to give consideration to the above points and moved for the augmentation of the record on appeal by the addition of the transcript of the testimony of the preliminary examination. We granted the motion and the transcript was filed with this court. The attorney general has made a motion to vacate our order granting the motion, which motion is hereby denied. We have examined the said transcript of the preliminary examination and the entire record on appeal and agree with appellant's counsel that the above points have no merit.

No other points raised require discussion.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.