[Civ. No. 34070. Second Dist., Div. Four. Dec. 31, 1969.]

JAN VAN HALEN, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE PASADENA JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

234

**COUNSEL**

Humphreys, McDonald & Russell and George McDonald for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Robert Lederman, Deputy District Attorneys, for Real Party in Interest and Respondent.

## OPINION

**KINGSLEY, J.**—Petitioner was arrested on a charge of misdemeanor drunk driving, in violation of subdivision (a) of section 23102 of the Vehicle Code. He was asked to, and did, submit to a so-called "breathalyzer" test, the result of which purportedly showed that his blood had an alcoholic content of .21 percent. It is admitted that the People intend to prosecute him on the charge for which he was arrested, that they will offer in evidence against him the result of that test, and that that evidence, if not successfully contradicted or impeached, will support a conviction. The present action is the result of his attempts to secure evidence which might have the desired rebutting or impeaching effect.

The operation of the breathalyzer test is set forth in the findings of the superior court as follows:

"2. That the said breathalyzer is an apparatus electrically powered whose function essentially is this: The suspect blows a given quantity of alveolar air into a tube at the end of which, and inside said breathalyzer apparatus itself, said air sample is trapped. That thereafter the said trapped sample is permitted to bubble through a test ampoule, the same being inserted into the apparatus before each test is administered, containing three cubic centimeters of .025 percent potassium dichormate in fifty percent by volume sulphuric acid solution; and that the last-mentioned solution acts as a reagent to alcohol, if any, suspended upon the suspect's breath, the light-transmissibility of which said solution changes correlatively as the percentage of alcohol increases, relative to a fixed quantum of alveolar air; and that thereafter a light beam is caused to pass through the said test ampoule, the relative light-transmissibility or lack thereof, of said solution being registered upon a meter which calculates the extent of alcohol in the suspect's circulatory system."

Petitioner secured a subpoena duces tecum, calling for the production of the test ampoule and its contents. The return was that, in accordance with departmental policy, they had been destroyed shortly after the test was administered. Petitioner then moved in the municipal court for a dismissal of the prosecution; that motion, twice made, was denied. He then sought in the superior court a writ of prohibition to prevent further prosecution of the criminal charge. After a hearing, the petition was denied. He has appealed. We reverse the judgment and order a dismissal of the superior court proceeding.

I

The uncontradicted testimony (drawn from witnesses admittedly expert in the field and either presently or previously employed in their professional

capacities by the City or by the County of Los Angeles) was: (1) that the glass used in test ampoules is not optically perfect, and that defects or imperfections therein would affect the passage of light in such a way as to give a reading inaccurately adverse to the test subject; (2) that it is possible that the quantity of the solution in the ampoule might be less than the assumed 3 cubic centimeters, and that any reduction in quantity would also produce an adversely inaccurate reading; and (3) that it is possible that the solution might be qualitatively inaccurate, again with an adversely inaccurate result.

Testimony, on which the People rely, was to the effect: (1) that it was not practical to reseal the ampoule with its original contents, after the ampoule had been inserted in the device for use in the original test; (2) that it was possible to store the original ampoule and make it available for analysis by defense experts; (3) that, although some risk of loss by spillage and of harm to a technician existed, it was possible to transfer the original contents of the test ampoule to another, sealable container; (4) that, even if the ampoule and its contents were so retained, a post-test analysis would not produce results sufficiently definite to be of value to a defendant.

The superior court found for the People on the issue of the impracticability of resealing the test ampoule with its original contents; it made no finding as to the practicability of transferring the contents to another container nor as to preservation of the ampoule per se. Any findings on those issues, on the record before us, would necessarily have been favorable to petitioner.[1]

The trial court made no findings on the other issues in the case— namely, whether it was technically possible to determine, by post-test examination and analysis, whether the test result was or was not accurate. The record before us does not show that findings on those issues would necessarily have been in favor of either party.

Since defendant's contention that he was denied due process of law by the intentional (although nonmalicious) destruction of the ampoule and its contents depends on a showing not only that those things could have been retained and made available to him, but on the further showing that, if so retained and made available, they would have been of value in his defense, it follows that, on this record, absent findings of fact by a trial

---

[1]We are not impressed by the argument that the presence of a small quantity of sulphuric acid in the formula made it excessively dangerous to transfer the fluid from the test ampoule into another and sealable container. Too many students have experimented with that acid in high school and college laboratories for us to say that an experienced laboratory technician could not safely perform that simple operation.

court, we could not determine whether a constitutional right had, or had not, been violated.

II

██ Petitioner, relying on language in *In re Cameron* (1968) 68 Cal.2d 487, 504 [67 Cal.Rptr. 529, 439 P.2d 633], *People* v. *Kiihoa* (1960) 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673], and *In re Newbern* (1959) 175 Cal.App.2d 862 [1 Cal.Rptr. 80, 78 A.L.R.2d 901], contends that, if the destroyed evidence should have been kept and made available for post-test analysis, he is entitled to a writ prohibiting the further prosecution of the charge against him. The People, in opposition, rely on *People* v. *Marich* (1962) 201 Cal.App.2d 462 [19 Cal.Rptr. 909], *People* v. *Tipton* (1954) 124 Cal.App.2d 213, 216-217 [268 P.2d 196], *People* v. *Candalaria* (1953) 121 Cal.App.2d 686, 689 [264 P.2d 71], *People* v. *Shafer* (1950) 101 Cal.App.2d 54, 59-60 [224 P.2d 778], and *People* v. *Anderson* (1948) 87 Cal.App.2d 857, 861 [197 P.2d 839].

The cases cited by the People are not helpful in the present case. In *Marich*, the defendant had made no effort at, or before, the trial, to secure the alleged sample of heroin for examination; in the case at bench, defendant, as we have indicated, made every possible effort in the municipal court—the point is not raised for the first time on appeal. *Anderson, Candalaria* and *Tipton,* stand only for the proposition that physical evidence, if adequately described by witnesses, need not necessarily be introduced as part of the People's case in chief. The case at bench involves no such issue; it is not here contended that the People could not make out a prima facie case by oral testimony concerning the test and its results. Petitioner desired only to be able to offer evidence rebutting or impeaching the damaging evidence that the People propose to use against him. The closest case is *People* v. *Shafer* (1950) *supra*, 101 Cal.App.2d 54, where the court said, at pages 59-60: "It is contended that appellant was denied due process of law in that he was not allowed to have his own chemist test the substance contained in the capsules. There is no authority for such contention, so long as he is confronted by the witnesses against him. The character of tests applied by the police chemist to the powder was described by him on the witness stand."

Not only did *Shafer* precede the cases relied on by petitioner, but the issue therein involved was not the same as in the case at bench. Petitioner here did not desire to repeat the test used by the police; what he desired was to perform other tests, not performed by the police and, therefore, not described to the trier of fact, in order to show that the tests made were scientifically inaccurate.

The People rely especially on *Covington* v. *Municipal Court* (1969)

273 Cal.App.2d 470 [78 Cal.Rptr. 563]. In that case, as here, the petitioner sought a dismissal of a prosecution because the test ampoule and its contents had been destroyed. But it is clear from the facts and evidence recited in the *Covington* opinion that the petitioner there had made no such showing as was made here, as to the possible values to a defendant of things which could have been retained. Further, the contention in *Covington* was based on the provisions of subdivision (c) of section 13354 of the Vehicle Code, which subdivision provides: "Upon the request of the person tested full information concerning the test taken at the direction of the peace officer shall be made available to him or his attorney." The court construed that provision as requiring no more than petitioner admittedly has been given, namely a description of the nature of the test and its result.

But *Covington* did not raise, and the opinion does not discuss, the constitutional issue raised in the case at bench. We do not regard it as controlling on the contentions made to us.

### III

On the other hand, we do not think that the cases on which petitioner relies go so far as to entitle him to the relief herein sought. In those cases, the defendant had already been tried; a reviewing court on appeal or on habeas corpus could not determine how far the unavailability of the missing evidence had affected the result and, therefore, of necessity, was required to set aside the conviction. But here, where the issue arises prior to trial and finding, it is possible to afford petitioner relief without denying the People their right to proceed with a trial. ■ Evidence of a breathalyzer or other chemical test is not a necessary element of a prosecution for drunk driving. ■ Many defendants were tried and convicted of that offense long before chemical tests were discovered or used; since petitioner here was arrested before the breathalyzer test was administered, there must necessarily exist evidence from the arresting officer tending to show the fact of his intoxication. If the evidence of the breathalyzer test is excluded, there is no reason why the People may not, if they desire, go forward with whatever other proof may be available. Petitioner could, and should, have objected in the municipal court to the introduction against him of the results of the breathalyzer test. He could, and should, in connection with that objection, have tendered to the municipal court the evidence and arguments herein presented. If the ruling was adverse to him, he had a remedy by way of appeal.

■ Prohibition does not ordinarily lie to secure a pretrial determina-

tion, at the appellate level, of intermediate rulings by a trial court on issues of law. We are not persuaded that any exception should be made here. The language of the Supreme Court in *People* v. *Superior Court* [*Smith*] (1969) 70 Cal.2d 123, 129-130 [74 Cal.Rptr. 294, 449 P.2d 230], is pertinent here. With one minor change, we quote it: "We, therefore, do not reach the merits and do not now decide the question of the admissibility of the evidence. This question we must leave to the determination of the court at the trial. When the People indicate their desire to introduce the evidence involved, the defendant will then have an opportunity to make an appropriate motion or objection to exclude such evidence. The trial judge may in his discretion determine the question of admissibility and hear any evidence relevant thereto, in proceedings outside the presence of the jury either before the commencement of the trial proceedings or in the course of the same. This will be conducive to a fair disposition of the matter since it will afford the parties an opportunity to present additional evidence should they feel it necessary to do so in view of the observations we [have heretofore made]. If the parties should not desire to present additional evidence, our holding herein should not in any way be deemed to preclude them, on an appropriate stipulation and subject to the [municipal] court's approval, from submitting the question of admissibility of evidence on the record heretofore made."

The superior court should not have entertained this action but should have dismissed it as not a proper case for the use of the writ of prohibition.

The judgment is reversed, with directions to the superior court to dismiss the petition for a writ of prohibition.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied January 12, 1970, and appellant's petition for a hearing by the Supreme Court was denied February 25, 1970.